THE BOARD OF EDUCATION OF GLYNN COUNTY *vs.* THE MAYOR, ETC., OF BRUNSWICK *et al.*

1. Comity to a co-ordinate department of the government requires of courts that cases shall not be disposed of on constitutional grounds, when it is possible to avoid such questions, without a sacrifice of the rights of parties.
(*a.*) This court has no jurisdiction to review judgments of lower courts, unless the judgment complained of, together with the error alleged therein, shall be plainly specified.
2. Under the act of 1873, the powers of the board of education are not more restricted in the distribution of the fund derived from what was formerly the endowment of the Glynn County Academy than of other funds entrusted to their care and management. The fund received from such sources goes into, and forms a part of, the general educational fund of the county, and is not required to be kept separate and distinct, or to be apportioned by a different rule.
(*a.*) The legislature changed its system of public education in Glynn county, and in consequence thereof, has made a different appropriation of the fund from that which formerly prevailed, and has called into existence a new agency, which it has invested with such powers as were deemed appropriate to carry into effect the object it had in view.
(*b.*) That the academy is a school of higher grade than other public schools of the county makes no difference. The board of education is invested with power to establish schools of higher grade.
(*c.*) The mayor and council of Brunswick and certain citizens of the town have no right to interfere, either as a corporation or as citizens of the county, with the management of the board of education. It is responsible to the public authorities for its management of the trust confided to its care.

April 15, 1884.

Comity. Constitutional Law. Practice in Supreme Court. Education. Glynn County. Before Judge MERSHON. Glynn Superior Court. May Term, 1883.

Reported in the decision.

GOODYEAR & KAY, for plaintiffs in error.

HARRIS & SMITH; BOLLING WHITFIELD, for defendants.

v 72-24

HALL, Justice.

The Board of Education of Glynn county was perpetually enjoined, by the decree rendered on a bill exhibited and prosecuted at the suit of the mayor and council of the city of Brunswick and certain citizens, residents of said munic- ipality, from distributing among the various schools of the county any portion of the income arising from what was once the exclusive endowment of the Glynn County Acade- my, located in that city.   Looking alone to the statements contained in the record, we should be at a loss to find rea- sons to sustain this decree, as we are satisfied, from a careful scrutiny of the several acts of the legislature creating this board and defining its powers and duties, that its action in this respect was warranted by the provisions of such laws. The endowment of this academy, even from colonial days, seems to have been exclusively from the public treasury. Much of the fund had been lost or squandered, and the school had ceased to be maintained, when the act creating the board of education for the county was passed, and an effort was made to augment what remained of the endow- ment by supplementing it with the county's quota from the fund provided by the state for the support of common schools.

1. It was insisted in argument by the complainants in the bill, that the endowment of the academy by the state was a contract between the public authorities and the cit- izens of Brunswick, who were attracted to that city, and became residents thereof by reason of the educational ad- vantages thus offered; that such citizens acquired vested rights in this alleged contract, and that an act of the gen- eral assembly, making another and different disposition of any portion of the academy endowment, divested these rights to the extent of this diversion, and thereby impaired the obligation of the contract.   We do not know that the presiding judge was at all influenced by this view, and are not inclined to attribute it to him.   Comity to a co-ordin-

ate department of the government requires, according to many decisions of this and other courts, that causes shall not be disposed of upon constitutional grounds when it is possible to avoid such questions, without a sacrifice of the rights of parties; besides, this court has no jurisdiction to review judgments of lower courts, unless the judgment complained of, together with the alleged error therein, shall be plainly specified. So that we do not pass upon this point, which, to say the least, appears to have the merit of novelty or originality, if no other, if either of these can be deemed meritorious.

2. It was contended here with earnestness and plausibility, and not without considerable force, that the distribution made of the academy fund was not in accordance with the provisions of the act creating this board, entitled "an act to regulate public instruction in the county of Glynn; approved February 21, 1873," (Acts, p. 256), the first section of which makes the board consist of the mayor of Brunswick, together with three fit and competent persons, freeholders and citizens of Brunswick, to be appointed for their respective terms of office by the mayor and council of said city, and one member to be appointed by the grand jury of Glynn county for each of the 25th, 26th and 27th militia districts; and by §16 of the act, the board of education is required to report annually to the grand jury of the county, at the fall term of the superior court, its financial transactions, with all schools established or aided within the county outside of the limits of the city, and to make an exhibit, if required, of all its records, books and papers, and also to make a like exhibit and report to the mayor and council of the city, when they shall so require, concerning all schools established or aided within the limits of the city, p. 262. By §2 of the act, p. 257, the board of education is made a body politic and corporate, with certain specified powers and duties, and among others they are invested in their corporate capacity with the title, care and custody of all school houses,

sites, school libraries, apparatus or other property belonging to the educational department as then organized, or thereafter to be organized, with all power to control, lease, sell or convey the same in such manner as they might think would best subserve the interest of education; also, with the title, care and custody of all property, funds, securities, books and papers belonging to the Glynn County Academy, to hold, invest and dispose of the proceeds from the same as provided by law; and the existing board of trustees of said academy were thereby authorized and instructed to turn over to said county board of education, so soon as the same was organized under the act, all titles to property, funds, securities, books, etc., thereto belonging.

The only question made under this legislation is, whether, by the terms of the act, the powers of the board of education are more restricted in the distribution of the funds derived from the academy than of others entrusted to their care and management. Whether this particular fund goes into and forms a part of the general educational fund of the county, or is to be kept separate and distinct therefrom, and is to be apportioned by a different rule? Whether, while the city of Brunswick can participate in the other funds proportionately with the rest of the county, it is entitled to the exclusive benefit of this academy fund? There is no provision of the act which, in express terms, justifies any such separation of this from the general educational fund, or directs the exclusive appropriation of the same as contended, and it would be going very far to imply this duty from differences of phraseology in vesting the board with the custody, control and disposition of these several funds; it is true that they have the power to control, lease, sell or convey the one in such manner as they shall think will best subserve the interests of education, while they are required to hold, invest and dispose of the proceeds of the academy fund as provided by law. If there is any special law requiring it to be disposed of in any particular manner, our attention has not been called

to it; certainly the act of the 22d of December, 1857, giving the trustees of Glynn County Academy power to lease or to sell and convey the academy buildings, situate in the old town of Brunswick, together with any of the real estate which has been assigned or dedicated to said institution, etc., by the legislature, and requiring the proceeds to be held for the benefit of the academy (Acts, p. 138), can have no such effect. Up to 1872, the public educational interests of the county seem to have been confided to the trustees of Glynn County Academy; in that year, so far as concerns the city of Brunswick, this power was transferred to the mayor and council thereof, which was authorized to lease a portion of the city commons for terms not exceeding ninety-nine years, and were required to appropriate all the revenue derived from the rents or taxes of the town commons (not including improvements thereon) for the support of such free public schools in the city as they might deem expedient and proper. §42, Act of 1872, pp. 166, 167, incorporating Brunswick. The power over this whole subject was transferred, as we have seen, in 1873 to another and different agency, in which the mayor and council of Brunswick have a voice both in creating and in controlling it saction, for they have a majority of the members of the board.

The legislature, as it had a right to do, has simply changed its system of public education in that county, and in consequence thereof has made a different appropriation of the fund from that which formerly prevailed, and has called into existence a new agency, which it has invested with such powers as were deemed appropriate to carry into effect the object it had in view. 22 *Ga.*, 506. The whole history of the Glynn County Academy shows that it was designed to afford free education to the children and youth of the county, and was not for the exclusive benefit of those residing within the limits of the city, of Brunswick; it is not and never was a private or corporate, but a public eleemosynary establishment; and this

injunction, in attempting to localize it and draw to its support an undue proportion of the educational fund of the county, is in conflict with the legislative will, as expressed in various acts upon the subject. There is no weight in the objection that it is a school of higher grade than other public schools of the county, and could not therefore have been intended to be placed on a footing with them. The 11th section of the act of 1873 gives authority to the board of education to establish schools of higher grade than common schools at such points in the county as the interests and convenience of the people may require, and when so established, such schools are placed under the special management of the board at large, which has power to provide school houses, employ and pay teachers out of the general educational fund entrusted to them. Nor is there any in the objection that the academy fund is to be administered in pursuance of law, while the general fund is to be disposed of according to the discretion of the board.

This discretion, we take it, is to be used in conformity to law, as is evident from various sections of the act prescribing the duties and responsibilities of the board, and especially those requiring it to report its actings and doings, not only to the grand jury and city authorities, but to the state school commissioner.

This injunction is set aside.

The parties prosecuting this suit have no right to interfere, either as a corporation or as citizens of the county, with the management of the board of education. It is responsible to the public authorities for its management of the trust confided to its care.

Judgment reversed.