The Trustees of the Academy of Richmond County
v. The City Council of Augusta.

1. Lands held in trust under the act of July 31st, 1783, and subsequent acts, vesting in trustees funds arising from the sale and lease of certain lands of the State for the erection and maintenance of a public academy in the county of Richmond, are exempt from municipal taxation, though separate from the tract on which the academy is situated and used only as a means of income for the institution, the same being public property of the State.

2. Where trustees as tenants in common own choses in action which are taxable as private property, and some of the trustees reside within and some without the limits of a municipal corporation, the corporation may tax the *pro rata* shares of those trustees residing within, but cannot tax the shares of those residing without such limits. This is true irrespective of the question as to whether a majority or minority of the trustees reside within the municipality.

December 22, 1892.

Taxation.    Municipal corporation.    Trust.    Before Judge Roney.    Richmond county.    October 20, 1892.

From the petition for injunction and exhibits thereto the following appears:    The city has assessed for taxation real estate of petitioner at $73,400, and personalty at $42,360.    On July 31, 1783, an act was passed for laying out the reserve land in Augusta and the erection of an academy, which vested the money arising from sales of lots in the hands of commissioners as trustees to carry out the intention of the act and to erect an academy, and their heirs and successors in office forever, in trust for the sole use of said church or academy.    On January 27, 1785, it was enacted that all public schools established by public money of the State should be a part of the State University.    On August 14, 1786, the trustees were authorized to lease out the commons of Augusta, the rent to be considered as part of the funds of the academy, and on February 13, 1797, an act was passed providing, among other things, that a majority

of the trustees residing in Richmond county should constitute a board of trustees for the academy and for the town of Augusta. The City Council of Augusta was incorporated by act of January 31, 1798. On December 15, 1815, it was enacted that the trustees of the academy, or a majority of them, could establish a seminary on the Sand Hills near Augusta, to be held and governed under the same rules as said institution, which petitioners proceeded to do, carrying it on until the close of the late war, when they placed the property under the lease in the hands of another board of trustees for this purpose. On December 21, 1819, the act of January 27, 1785, was amended, establishing the State University, and the trustees of the academy then in office having been named therein, were authorized to have and use a common seal when they were acting as a corporate body. By act of December 18, 1820, all the real estate belonging to or attached to the different academies of this State was exempted from taxation, together with all such academies as might thereafter be established. Under these acts petitioners have conducted and carried on for more than one hundred years an academy in accordance with the terms of the acts calling it into existence. In October, 1835, a contract was entered into between petitioners and the City Council of Augusta, by which petitioners quitclaimed to the city council all their title and interest to the land included in the corporate limits of the city known as the east and south commons, with certain exceptions not necessary to be here mentioned, the city council agreeing to pay petitioners annually $1,200, and that whenever sales should be made by the city council of any portion of the premises to the amount of $30,000, the proceeds of subsequent sales should be equally divided between the parties. While this continued of force no taxes were assessed by the city council against this property to which

it held title and in which petitioners had an undivided one half-interest in the proceeds of sale. Questions having arisen between petitioners and the city council as to the management of this property and the true interest of each in it, a bill in equity was filed to adjudicate all questions growing out of the contract, and in January, 1891, a decree was made pursuant to which a deed was executed by the city council, apportioning between the two corporations the unsold portions of the vacant land on the commons, so that from that date the lots so conveyed back to the trustees became and remained their property, for the purposes specified in the original acts under which they were incorporated. Since 1878 petitioners have kept open the academy as a high school for white boys of Richmond county, and it is now the only high school for that purpose located in Augusta. Separate and independent organization exists for the common schools and for the high school for girls, which system is supported and maintained by taxation annually. The only sources for the maintenance and support of the academy is the income from investments made of money arising from the sales of lots on the commons made by itself and the city council. A large portion of the investments from such income were lost by reason of the war, and the income since the war is barely sufficient to pay the salaries of teachers and keep the academy in repair. If the tax on the realty is to be paid by petitioners, it will be taken out of the academy income and necessarily lessen the ability to pay the teachers and conduct the academy high school. All the property petitioners have which brings in an income has arisen from investments of the proceeds of sales of lots, except $5,000 bequeathed by Mrs. Tubman to the petitioners, she being the grantor in a deed of gift to the county board of education, of property now the *situs* of the female high school, and in which

provision is made for reversion to petitioners if that high school is not kept up under the State law. After the conveyance in settlement and under the decree of 1891, petitioners made efforts to sell the lands on the south commons, but have failed to do so, except as to four small vacant lots for a small sum. If this realty is held subject to city taxes, the income of the school will be so reduced as to seriously impair their ability to keep up a first class school and academy. Petitioners claim that under the legislation and facts mentioned, and under the constitution of 1877 (Code, §5182), carried into effect by act of December 11, 1878, the realty which it is endeavored to subject is exempt from taxation, because, (1) the academy was instituted and is supported by funds arising from property set apart by legislative act of the State, and is to be considered as a part of the University of Georgia, its property exempt from taxation in the same manner and to the same extent as the property of that institution ; and (2) the vacant land assessed for taxation is not liable to taxation, it being public property, not held for private purposes and bringing in no income. As to the personalty assessed for taxation petitioners allege the following : Richard Tubman, who died in 1836, devised all his real estate in Augusta after the death of his wife, to petitioners, the annual product thereof to be by them appropriated to the erection of a poorhouse in the county, and the support of its inhabitants. The life-tenant died in June, 1885. Afterwards a controversy arose between petitioners and the city council and the county commissioners, which was finally decided by the Supreme Court. 77 *Ga.* 517. After receiving possession petitioners decided that a lot be purchased in or near the city, suitable to erect a poorhouse upon, to be paid for out of the income from the property, as soon as sufficient, and thereafter in October, 1888, purchased a tract of land located in the county

beyond the city limits and made it the *situs* of the trust. By decree of April, 1887, petitioners were authorized to sell all of the realty in the city and invest the proceeds in bonds, and in April, 1887, were authorized to sell privately certain portions of the property. After such sales had been made, the title to no realty in the city stood in the names of petitioners as trustees under the will of Richard Tubman, on January 1, 1892, the date when by law taxes for municipal purposes is assessable, except as security for payment of the purchase money. Many of the sales were on time, and the notes running to maturity and unpaid, and which were not invested pursuant to the orders of court mentioned, aggregate $42,360. The parties in possession of the realty so sold have returned the same for taxation to the city council, so that the same amount of taxes therein will be collected as before the sale by petitioners. Since October 31, 1888, the *situs* of the property held by petitioners under the Richard Tubman bequest has been outside of the city, a full board of the trustees having thereafter met in session in a building upon the premises reserved for their use. A majority of the present board of trustees are non-residents of the city.

To the petition the defendant demurred generally, and specially to that part setting up excessive valuation. It answered, in brief: The assessment was made after due notice and in accordance with law. Petitioners do not constitute such a corporation as exempts their property from taxation. The property which it has assessed is not public, but is private. Petitioners are not a part of the State University, nor of the State public school system, are not in the conduct of their school subject either to the supervision or control of the State authorities, and have no connection with the public school system or the public education of the State. They are engaged in the business of carrying on a pay school of

different grades in the city, which is under their exclusive authority and control, and they have the right and exercise it of prescribing the terms and conditions under which pupils are admitted thereto. The real estate which has been assessed is a part of the fund belonging to petitioners, from the proceeds of which the school can in whole or part be supported. Petitioners have derived income from the rental of the whole or part of said property since they became possessed of the same, and now receive income from the same. In 1891, in consequence of differences between petitioners and defendant, arising in part from defendant's claim that it had been compelled to pay State and county taxes and other charges upon said property, which by inadvertence or oversight had not been deducted from the proceeds of sales made under the contract of 1835, negotiations began which resulted in a settlement of all the differences between petitioners and defendant, and a conveyance of the lots in question by fee simple deeds to petitioners, as well as the payment by defendant to petitioners of a large sum of money. Petitioners hold the lots as a private corporation; they are in no sense public property, and their proceeds have not been and will not be devoted to public uses as recognized by the laws of Georgia. The only property of petitioners which is exempt from taxation is its academy of learning, and that is not, if any part of it is productive of corporate income. All laws which exempted petitioners' property from taxation were repealed by the constitution of 1877, and petitioners do not occupy any higher position than a charitable or religious institution, both of which have been held subject to taxation. The liability of the notes and accounts to taxation is as follows: The legal residence of the trustees in charge of this fund is in Augusta and has always been there; it holds the fund as a corporation; its president resides in Augusta; three

of its members reside there; and under the law the president of the corporation is the person required to make tax returns. Petitioners as trustees of this fund have never erected a poorhouse, and there can be no ·such thing under the law as the exemption of such poorhouse until it has an actual existence. The purchase by petitioners of the land outside of the city, which land defendant is informed and charges is rented out and is an income producer, will not, because petitioners held a meeting thereon, constitute them non-residents of the city, the anomaly being presented of the same corporation being a resident of the city while controlling the academy, and a non-resident while controlling the poorhouse and fund. There has been no legal action of petitioners whereby the legal residence of the trustees of the academy has .been removed beyond the city limits. Under the law the notes and securities held by petitioners as the proceeds of the sale of its real estate in the city, which are actually kept within the city limits in the custody and control of the treasurer of the corporation who is an actual citizen and resident of the city, are subject to taxation. The law takes no cognizance of the fact that a majority of the corporation may be non-residents of its legal residence, and except by express authority of law a corporation can have but one legal residence. The real estate sold by petitioners is under the law subject to taxation as the property of the purchaser, and the purchase money notes are subject to taxation as the property of petitioners, who still hold title to the property as security for the purchase money.

The case was heard upon an agreed statement of facts, the major portion of which consisted of a statement of the acts of the legislature above mentioned and acts which do not seem material to be here mentioned, of the contracts and conveyances thereunder, mentioned

above, of the material portion of the will of Richard Tubman, the decree directing his executor to turn over to petitioners the real estate owned by him at his death and passing under the will, and of the decrees authorizing the trustees to sell this property, etc. The following facts were also agreed upon: The lots of land conveyed by the city council to the academy under the deed of 1891, comprising the land now assessed for taxation, were vacant and unimproved at the time of the conveyance and are now, except a portion of a vacant block which had been rented out by the city council as a farm, and since the execution of the deed the trustees have rerented this portion of the land used as a farm, for which they are to receive $225. The decree under which the deed was made was a consent decree based upon an equal partition of all the lots then unsold, with the money on hand or the notes representing sales made by the city council. Until this decree no municipal tax was ever assessed against the property. The trustees of the academy have always charged tuition and now charge $15 per annum, which sum is received by the teachers and apportioned among them, with amounts added by the trustees from the income of the academy. There is no high school for males in Augusta established by the county board of education, but there is one for females at which the tuition charged is $15 per annum. The trustees have tried to sell the lots conveyed to them by the city council, but have sold only four, which were sold for $1,100, part cash and the balance on time. The principal of all sums received from sale of lots on the commons is uniformly invested to bring in an income, upon which and the tuition of $15 per annum the academy relies for support. All the income bringing property petitioners have has arisen from investment of the proceeds of the sale of lots, except the $5,000 bequeathed by Mrs. Tubman as stated above. All the

property coming to the trustees under the will of Richard
Tubman has been sold, and the proceeds, now repre-
sented by notes and not invested in State bonds, amount
to $42,363.50.   After receiving possession of the realty
in Augusta under his will, the trustees resolved to pur-
chase a lot upon which to erect a poorhouse, to be paid
for as stated above, and in 1888 did purchase land be-
yond the city limits, which purchase was confirmed by
decree of the superior court, and thereafter they entered
into possession of the premises, resolved that the premises
should be known as the "Tubman Home," and the land
held and deemed for all legal purposes the site of the
institution and place of transacting the business of the
trust.   The purchasers from the trustees of the realty
in Augusta passing under the will, who are indebted
therefor the $42,630, reside in Augusta and have re-
turned and paid taxes to the city council for 1892, on
all the realty purchased by them.   The indebtedness of
the $42,630 is the unpaid purchase money of the realty
passing under the Tubman will, and it is on this sum
that the personalty tax is assessed.   The residence of
the several trustees of the academy as set out in the
petition is correct, and a majority of the board reside
out of the city limits but within the county.   The
academy is located in the city, and its president and
treasurer reside there, the treasurer being the custodian
of its funds and securities.   When transacting the busi-
ness of the academy the trustees meet in Augusta.   All
that has been done towards the erection of the poor-
house has been to buy the land mentioned outside of
the city, which land is rented out by the trustees as a
farm, and they receive an income therefrom, save that
part on which the building stands, which is used by the
board as an office.   Nothing further has yet been done
towards erecting a poorhouse, because under the will
of Richard Tubman only income can be used, and this
is not yet sufficient for the purpose.

FRANK H. MILLER, for plaintiff.

JOHN S. DAVIDSON, for defendant.

SIMMONS, Justice.

The City Council of Augusta sought to subject to taxation property held by the Trustees of the Academy of Richmond County under two separate trusts: (1) lands held for the use of the academy, under a trust created by the State; and (2) *choses in action* held under a trust created by the will of Richard Tubman for the erection of a poorhouse. Exemption was claimed as to both kinds of property, as to the lands because they are public property, held and used for a public purpose; as to the *choses in action* because their *situs* for taxation is outside the corporate limits of the city. An injunction was prayed against the enforcement of the execution issued for the taxes claimed to be due on this property, and the case was heard upon an agreed statement of facts, which, together with the petition and answer, is set out, in substance, in the report prefixed to this opinion. The court below refused an injunction, and the petitioners excepted.

1. The trust under which the lands are held had its origin in the act of July 31st, 1783 (Marb. & Crawf. Dig. 132), by which the legislature established and endowed the academy afterwards designated as "The Academy of Richmond County"; this being done in conformity to the constitution of 1777, which provided that "schools shall be erected in each county and supported at the general expense of the State, as the legislature shall hereafter point out and direct." (Marb. & Crawf. Dig. 12.) By this act, certain persons named therein as commissioners were directed to lay out lots from the public lands of the State in and near the town of Augusta, and to sell the same; and the moneys arising therefrom, after defraying the expense of building a church, were vested in the commissioners as trustees, for

the erection and maintenance of an academy or seminary of learning, to be conducted under their supervision; and they were required to account yearly to the governor and executive council.

Sections 4–7 of the act are as follows:

"Sec. 4. And whereas, a seminary of learning is greatly necessary for the instruction of our youth, and ought to be one of the first objects of attention after the promotion of religion: Be it further enacted, that after the said commissioners have reserved one of the first lots for the building a church or house of worship to the Divine Being, by whose blessing the Independence of the United States has been established, and a reserve of ten other principal lots for public uses, the moneys. arising from such sales, after defraying the charges of the building said church, shall be, and they hereby are, vested in the hands and power of said commissioners named as aforesaid, as trustees, for the purpose of carrying into execution the intentions of this law, and for erecting an academy or seminary of learning as aforesaid, their. heirs and successors in office forever, in trust for the sole use of said church and academy or seminary.

"Sec. 5. And be it further enacted, that the said commissioners, on the sales and restrictions aforesaid being complied with, shall be, and they are hereby, authorized and empowered to give titles as amply and fully to such purchasers, as the State possibly could or might do, and in their name and the name of their successors in office, to receive such moneys, both principal and interest, arising from such sales, or the loan of any part thereof, and the same to lend out again at interest, or otherwise dispose of, as the said commissioners, or a majority, their successors or a majority of them, shall think most advantageous to the fund of the said church and academy or seminary.

"Sec. 6. And be it further enacted, that the said com-

missioners or trustees shall yearly, and every year, render a just and true account of the fund of said seminary, to his honor the governor and executive council for examination; and if found by them guilty of malpractice, such offending commissioner or commissioners shall be displaced and others appointed for that purpose in his or their room.

"Sec. 7. And be it further enacted, that the said commissioners shall be, and they are hereby authorized and empowered to erect on one of the said lots, or purchase from the sales of the same, some spot convenient for that purpose, a building commodious and proper to answer the intentions of this act, as an academy or seminary, as aforesaid, and to enter into such contracts for erecting the same as may be thought most advantageous for the said fund by a majority of the said commissioners; and further to procure and agree with proper masters and professors for the ruling the same, and to institute such by-laws, for the increasing the said fund and better governing the said seminary, as to the said commissioners may appear best adapted."

From time to time other acts were passed making further provision as to the support of the institution. One of these was the act of August 14th, 1786, which authorized "the trustees of the Richmond Academy" to lease out the commons of Augusta, the rent "to be considered as part of the funds of the said academy." (Marb. & Crawf. Dig. 134.) And this was followed in 1810 by an act which, after reciting that the academy was in a flourishing condition and deserved the further patronage of the legislature, authorized the trustees, upon the expiration of the existing leases, to "lease out any part or the whole of the said common in lots for one or more years at their discretion, the rents . . to be considered as part of the funds of the said academy."

Some question having afterwards arisen between the

trustees of the academy and the City Council of Augusta as to their respective interests in the commons, a settlement was agreed upon, under the terms of which the trustees released to the city council their interest therein, with certain exceptions; the city council agreeing to pay the trustees a certain sum annually, and after the sales of lots from the property should reach a certain amount, to divide equally the proceeds of subsequent sales; and this settlement was confirmed by the legislature. (Act of December 22, 1834.) Subsequently a petition was filed to adjudicate questions growing out of this contract, and in January, 1891, a decree was made by the superior court of Richmond county, pursuant to which the unsold portions of the vacant land on the commons were partitioned between the city and the trustees, and the city council conveyed back to the trustees the land now assessed for taxation. The tax in question is for the year 1892. Up to that time no tax had been assessed against the property.

It is claimed on the part of the city that the property is not public but private, that the academy is conducted by the trustees as a private school and is not a part of the public school system of the State or county; and that as the lands taxed are separate from the tract on which the academy is situated and are used only as a means of income, they are not within the exemptions allowed by the constitution and granted by the statute of exemptions. (Code, §§5182, 798.)

In view of the legislation to which we have referred, there can be no question as to the public character of this institution originally. The property vested in the trustees was public property and was committed to them for a public purpose. No private interest of any kind was acquired The beneficial interest was in the public, and the trustees were merely agents of the State for the administration of the fund and the management of the

institution. Since that time there has been no legisla-
tion changing the public character of the trust or part-
ing with the control of the State over the institution
or the fund connected with it. Mere non-interference
with the control exercised by the trustees could not
affect the rights of the State or divest the institution or
the property of its public character. Nor is the insti-
tution conducted now, any more than it was at first,
for any private purpose. It still subserves the public
end for which it was created—the education of the
people; and its purpose is none the less public because
of its being conducted independently of the general pub-
lic school system of the State or county. The right of
the State as to property held in this manner was under
consideration by this court in the case of *Dart et al.* v.
*Houston et al.*, 22 *Ga.* 506. It was there complained by
the plaintiffs in error that the court below erred in de-
ciding that the Glynn County Academy, an institution
endowed in the same manner as the Richmond County
Academy, was a public corporation, and that the trus-
tees had no beneficial interest in the fund, but only a
naked power which the State could resume at pleasure.
This court affirmed the judgment, and held that the
funds of the academy were public property and that the
control of the institution was in the State. As to the
same institution it was said, in the case of *The Board
of Education of Glynn Co.* v. *Mayor, etc. of Brunswick,*
72 *Ga.* 353: "It is not and never was a private or
corporate, but a public eleemosynary establishment."
See also the opinion of NISBET, J., in *Cleaveland* v. *Stew-
art,* 3 *Ga.* 291.

These lands, therefore, are clearly exempt under the
statute (Code, §798), which declares that "all public
property" shall be exempt from taxation. It is imma-
terial whether the property is used merely for income
or not. The proviso at the end of the statute and of

the constitutional provision on this subject (Code, §5182), which excludes property " used for purposes of private or corporate profit or income," does not apply to public property. As was said in the case of *The Trustees of the Academy of Richmond County* v. *Bohler, tax-collector,* 80 *Ga.* 163, " The terms ' private or corporate ' are employed in contradistinction to public. . . . Public property is not taxed, whether income be derived from it or not." See also on this subject, Auditor General *v.* Regents of University of Michigan, 10 Lawy. Rep. Annot. 376, and notes, and Regents *v.* Hamilton, 28 Kans. 378, opinion by Brewer, J. And see Cooley, Taxation, 172–174.

2. That part of the property taxed which was held under the will of Richard Tubman as a part of the poorhouse fund, consisted of notes and accounts. In the absence of statutory provisions to the contrary, choses in action follow the person of the creditor; and where the legal title is in a trustee, he is regarded as the owner, and they are subject to be taxed at his domicile. *City Council* v. *Dunbar,* 50 *Ga.* 392, 393; *Wright, compt. gen.,* v. *Southwestern R. Co.,* 64 *Ga.* 799; Cooley, Tax. 375; Burroughs, Tax. 225; Jacobs' Law of Domicile, §51. Here some of the trustees resided in the city, and the others outside, in the county. Our statutes make no provision for such a case as this, nor is there any decision of this court on the subject. We think, however, a just and proper rule under such circumstances is that furnished by the decisions of other courts in similar cases, which are here cited. In Mayor, etc. of Baltimore, *v.* Stirling, 29 Md. 48, it was decided that " where property held in trust by trustees, who reside, one in Baltimore city and the other in Baltimore county, is taxable, the same should be taxed in equal proportion as of the place of residence of each trustee." This ruling was followed in the case of the

Appeal Tax Court of Baltimore City *v.* Gill, 50 Md.
396.   There, as here, there was no statute which ex-
pressly provided for such a case.   In State of Ohio, *ex
rel.* Harkness, *v.* Matthews, 10 Oh. St. 431, it was held:
" Where three executors of an estate reside in the same
township, two of them within the corporate limits of a
village, the other without such limits, and who have
possession, in law, of taxable moneys, credits, bonds
and stocks of the estate, the same must, in view of the
equities and analogies of the statute (which does not
expressly provide for such a case), be entered for taxa-
tion, one third as of the place of residence of each
executor."   To the same effect, see Hardy *v.* Inhabitants
of Yarmouth, 6 Allen, 278.

To hold that under such circumstances the whole of
the property of this kind held by the trustees could be
taxed by each municipal corporation within whose
limits one of their number might reside, might render
the property subject to be taxed several times over; and
unless expressly authorized by statute such taxation will
not be upheld.   The fact on the one hand that the
president and treasurer of the board resided in the city
and there kept the evidences of debt upon which the
tax was assessed, or on the other hand that a majority
of the trustees resided outside of the city, in the county,
and that the meetings of the board for transacting the
business of this trust were held outside of the city at
an office on the premises selected for the site of the
poorhouse, did not render the one place or the other
the *situs* of the whole of this property for taxation.
The debts, as we have seen, had no *situs* of their own;
being intangible property, they followed the creditors.
And the creditors, under the decision of this court in
*City Council of Augusta* v. *Walton, ex'r,* 77 *Ga.* 518(b),
527, were the trustees personally and as tenants in com-
mon, and not as an incorporated body.   It was there

adjudicated that the trust under which this indebtedness is held " devolved upon the persons who might be the trustees of the Richmond County Academy, and not upon the corporation of which they were trustees." Consequently, as to this property, they could acquire no corporate domicile, and the fact that they met or had their office in a particular place, or the fact that the president and treasurer resided in a certain locality and there kept the evidences of debt, did not operate to give them one. The debts had their *situs* where the trustees resided or were domiciled individually, and were taxable at no other place. We hold, therefore, that while the city could properly tax the *pro rata* shares of those trustees who resided within its corporate limits, it was not authorized to tax the shares of those who did not reside there.          *Judgment reversed.*