1. "In a case where the undisputed evidence shows that the relation of landlord and tenant exists between the parties, the execution of a warrant to dispossess the tenant will not be enjoined by a court of equity; the remedy of the tenant, if he has any defense, being to file the counter-affidavit provided for by the statute; and this is so though the tenant, on account of poverty, may be unable to give the bond and security required as a condition precedent to the filing of such counter-affidavit." Johnson v. Thrower, 117 Ga. 1007
(2) (44 S.E. 846). See also Napier v. Varner, 149 Ga. 586 (2) (101 S.E. 580); DeFlorio v. Tarvin, 193 Ga. 760, 762 (20 S.E.2d 29); Grimmett v. Barnwell, 184 Ga. 461 (192 S.E. 191, 116 A.L.R. 257); Dowling v. Doyle, 149 Ga. 727 *Page 59 
(102 S.E. 27); Brown v. Watson, 115 Ga. 592 (41 S.E. 998). The same rule applies in the absence of facts justifying the application of equitable principles such as for the prevention of fraud (Huff v. Markham, 71 Ga. 555), even though the tenant in seeking equitable relief from the statutory writ may pay or tender the amount of rent provided for by the lease, together with all costs of the proceeding. White v. Lawrence, 133 Ga. 528 (2) (66 S.E. 171); Hall v. Holmes, 42 Ga. 179.
2. Under the foregoing rules, the petition, when treated without reference to the relief asked for under the provisions of the remedial statute approved February 12, 1945, authorizing declaratory judgments, was subject to the demurrer interposed.
3. Under the declaratory judgment statute the tenant was privileged to invoke by amendment to his equitable petition, remedial powers of the court thus delegated, in construing the rent contract with respect to controversies as to its proper construction insofar as such interpretation might guide his future acts and conduct with respect to points of actual justiciable controversy. Pritchard v. Savannah Railroad Co., 87 Ga. 294, 296 (13 S.E. 493, 14 L.R.A. 721); Baker v. Smith, 91 Ga. 142 (16 S.E. 967); Bowers v. Keller, 185 Ga. 435 (195 S.E. 447).
4. The declaratory judgment statute of this State expressly declares that it relates to "cases of actual controversy;" but, even in the absence of any such provision, "a similar limitation is generally implied and observed by the courts both in America and in England. No proceeding lies under the declaratory judgments acts to obtain a judgment which is merely advisory or which merely answers a moot or abstract question." 16 Am. Jur. 282, § 9.
5. The declaratory judgment statute does not, however, purport to reach back and nullify the rights, remedies, and penalties in favor of landlords which have already accrued as provided by the Code, §§ 61-301 to 61-307, inclusive, relating to dispossessory warrants when the tenant is already in default. This is true for the reason that "A court will not take jurisdiction to render a declaratory judgment where another statutory remedy has been especially provided for the character of case presented, if the effect would be to interfere with the right of the parties to appeal to the court given jurisdiction in that particular matter by the statute." 16 Am. Jur. 295, § 21. See annotations in 12 A.L.R. 75, 50 A.L.R. 48, 68 A.L.R. 119, 87 A.L.R. 1219. The court therefore erred in enjoining the landlord from resorting to the remedy provided by law for his protection, insofar as it related to rights already accrued on account of past-due claims for rent.
6. The court, in conformity with the authority given under the declaratory judgment statute, properly construed, except as provided by paragraph 2 of its opinion, the provisions of the contract in dispute to which exceptions are taken, and, in accordance with that statute, by section 7 of its decree, properly left for determination by a jury the actual amount of the future rent liability for which it adjudicated that the contract made the tenant liable. If in this proceeding the amount of such liability should be adjudicated prior to any such determination for past-due rent under a subsequent dispossessory warrant, such finding by a jury in this case on such question of fact would govern and control the *Page 60 
amount due in the other proceeding, and vice versa. This would be true despite any contrary or inconsistent ruling by the court in section ten of its decree, to the effect that the plaintiff (lessee) has made "deposit with the clerk of this court to cover the percentage of receipts from the space in controversy." See Kennedy v. McCarthy, 73 Ga. 346.
7. "The courts will ordinarily refuse to entertain an action for a declaratory judgment as to questions which are determinable in a pending action or proceeding between the same parties." 16 Am. Jur. 295, § 22. But in this case, prior to the institution of any dispossessory warrant proceeding, the court having by its judgment properly construed the contract (except as indicated by paragraph 2 of the opinion), such rulings, pending the final hearing, have the force and effect of a judgment or decree, and as such, and to such extent, are binding on all of the parties. The judgment having merely adjudicated the fact of certain liabilities, without thus far determining the amounts thereof, it follows that, in order for the tenant to forestall liability and penalties made and provided for under a dispossessory warrant statute relating to cases where rent is past-due and unpaid, he must, at his peril, and prior to becoming amenable to liability and penalties under such a proceeding, pay or tender to the landlord the full amount of the rent past-due and unpaid. This is true for the reason that, while the court now has jurisdiction under the statute to adjudicate the amount of such future liabilities under the contract, it cannot deprive the landlord of his material rights (such as the giving of a bond by the tenant, liability for double rent and forfeiture of the lease) given him under the dispossessory warrant statute, merely by asking the court, not what he should have done, but what in the future he ought to do. In order to avoid any such complication, recourse to the declaratory judgment statute should be had prior to any default in the payment of rent, which default the court in this case has adjudged to be the fact.
 No. 15235, 15239. SEPTEMBER 5, 1945. REHEARING DENIED NOVEMBER 19, 1945.
Shippen leased to Folsom the Pershing Point Apartments for a term of twenty years, the lease declaring that "nothing herein shall be construed so as to create any other relation between the lessor and lessee than that of landlord and tenant." The lease provided for the payment of a minimum rental of $2000 per month, and for additional rental represented by a stated graduated percentage of the gross room or apartment receipts derived by the lessee over and above stated named amounts. The lease further provided as follows: "It is covenanted and agreed that time is of the essence of this contract, and that, in the event any instalment or rent provided for herein shall remain unpaid for thirty days after it is due, or in the event the lessee fails or refuses *Page 61 
to perform any of his other obligations and covenants under this contract, the lessor may at her option cancel and terminate this lease, and re-enter and take possession of the demised property, provided that the lessor shall first give lessee ten-days' notice in writing of her intention to exercise her said option, and providing further that within said ten days the lessee does not comply with his obligation under the contract." Certain demands for rent were made by the owner for alleged rent accrued and past-due, which were denied and refused by the tenant. Upon the owner threatening to enforce his demands, the lessee filed a bill in the superior court, seeking to construe the terms of the agreement, and asking that the owner be enjoined from giving petitioner "any notice of eviction," and tendered in court a stated sum, which he avers more than covers any possible claim for rent by the owner. The nature of the points in controversy appears in the judgment of the trial court, which is hereinafter set forth.
The petition was amended by invoking the provisions of the declaratory judgment statute, approved after the filing of the petition. This statute (Ga. L. 1945, p. 137), is herein set forth as follows: "Section 1. (a) In cases of actual controversy the respective Superior Courts of the State of Georgia shall have power upon petition, or other appropriate pleading, to declare rights, and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed, and such declaration shall have the force and effect of a final judgment or decree and be reviewable as such. (b) In addition to the cases specified in paragraph (a) of this section, the respective Superior Courts of the State of Georgia shall have power upon petition, or other appropriate pleading, to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed, in any civil case in which it appears to the court that the ends of justice require that such declaration should be made, and such declaration shall have the force and effect of a final judgment or decree and be reviewable as such. Section 2. Further relief based on or included in a declaratory judgment or decree may be granted in the same suit. The court, in order to maintain the status pending the adjudication of the questions or to preserve equitable rights, may grant injunction and other interlocutory *Page 62 
extraordinary relief, in substantially the manner and under the same rules as apply in equity cases. Section 3. When a declaration of right or the granting of further relief based thereon shall involve the determination of issues of fact triable by a jury, unless jury trial be waived, such issues shall be submitted to a jury of twelve in the form of interrogatories, with proper instructions by the court, whether a general verdict be required or not. Such instructions by the court shall in all respects be governed by the laws of Georgia relating to instructions or charges by a court to a jury. Section 4. A proceeding instituted under this act shall be filed and served as other cases in the Superior Courts of this State and may be tried at any time designated by the court not earlier than twenty days after the service thereof, unless the parties consent in writing to an earlier trial. Trials may be had in term or in vacation. If there be an issue of fact which requires a submission to a jury, such jury may be drawn, summoned and sworn either in term or vacation. Section 5. In any proceeding under this act the court may make such award or division of costs as may seem equitable and just. Section 6. No declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding involving the validity of a municipal ordinance or franchise, such municipality shall be made a party and shall be entitled to be heard as a party. If a statute of the State, or any order regulation of any administrative body of the State, or any franchise, granted by the State is alleged to be unconstitutional, the Attorney General of the State shall be served with a copy of the proceeding and shall be entitled to be heard. Section 7. Without limiting the generality of any of the foregoing provisions, any person interested as or through an executor, administrator, trustee, guardian, or other fiduciary, creditor, devisee, legatee, heir, ward, next of kin, cestui que trust, in the administration of a trust or of the estate of a decedent, an infant, lunatic, or insolvent, may have a declaration of rights or legal relations in respect thereto and a declaratory judgment: (a) To ascertain any class of creditors, devisees, legatees, heirs, next of kin or others, or (b) To direct the executor, administrator, or trustee to do or abstain from doing any particular act in their fiduciary capacity, or (c) To determine any question arising in the administration of the estate or trust, including questions of *Page 63 
construction of wills and other writings. Section 8. The enumeration in Section 7 does not limit or restrict the exercise of general powers conferred by Section 1, in any proceeding covered thereby where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove the uncertainty. Section 9. The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding. Section 10. Nothing in this act is intended to impair the equity jurisdiction of the Superior Courts of the State as such jurisdiction now exists. Section 11. If any provision of this act, or the application of such provision, to any person or circumstances shall be held invalid, the validity of the remainder of the act and the applicability of such provision to other persons or circumstances shall not be affected thereby. Section 12. All laws and parts of laws in conflict herewith are hereby repealed. Section 13. The purpose of this act is to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations, and is to be liberally construed and administered."
On the hearing the judge passed an order overruling the defendant's demurrer to the lessee's petition, enjoined the defendant from giving any notice of eviction or cancellation of the lease, and proceeded to construe the contract. To this action the owner, by the main bill of exceptions complains that "the declaratory judgment act could not be effective when there was no case on which the plaintiff can claim such relief, and because the judgment was against an apprehension and was premature, and because the injunction was granted as to features which the court himself said the defendants had the right to insist upon, and because the injunction seeks to do away with Code sections providing the relation of landlord and tenant, and for bond to be given, and in such a trial all the contentions of the plaintiff could have been proven, and by the injunction the defendants are deprived of bond and security for double rent."
The lessee filed a cross-bill of exceptions, complaining of certain adverse rulings in the construction of the contract, which will appear after the order passed by the judge, as follows: "The within case coming on to be heard upon a petition which was originally *Page 64 
brought on the equity side of the court, but, petitioner having amended, thereby undertaking, and, by his petition as amended, turned the case into a case for a declaratory judgment, under and by virtue of the recent act of the General Assembly of the State of Georgia (approved February 12, 1945), and after a submission of evidence and argument it is held: 1. That, by virtue of said act of the General Assembly (known as The Declaratory Judgment Law), this court has the authority to grant the relief sought, in that a controversy as set out in the petition, as amended, based upon said act, does exist, as shown by the pleadings herein. Especially is the court moved to this view by reason of the significant language in section 13 [of the] act, here quoted. `The purpose of this act is to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations, and is to be liberally construed and administered.' 2. After considering the pleadings as amended, which the court considers appropriate, and, further, the court being of the opinion that the case is one in which the rights of the respective parties may be declared and decreed, and an actual controversy existing, which if determined in this action may foreclose further and future litigation between the parties involved insofar as the subject-matter of this particular action is concerned, the court makes the rulings here made. 3. Controversy has arisen over the meaning and scope of the words in the contract, `a percentage of the gross room and apartment receipts of the lessee from the operation of said hotel apartment in excess of fifty-eight thousand eight hundred ($58,800.00) dollars.' This controversy grows out of the question as to whether this language should include: a. Monies received and collected by lessee, if any, from rental of the dining room; b. Whether or not it should include living-room space actually occupied by the lessee himself and by other members of his family; c. Whether it should include office space and lobby space occupied by the lessee for office and lobby purposes only; and for which no sums have been received or collected. 4. The court is of the opinion, and so holds, that the language, `a percentage of the gross room and apartment receipts of the lessee from the operation of said hotel apartment in excess of fifty-eight thousand eight hundred ($58,800.00) dollars,' should include all monies collected by the lessee from rental of the dining-room space. 5. The court is *Page 65 
further of the opinion that the language quoted in paragraph 4 with reference to percentage should and does apply to any space occupied by the lessee and members of his family for living quarters, and that the terms of the written contract should not be allowed to be varied by any custom of the trade to the contrary notwithstanding. The court is of the opinion that the plain language of the contract requires this holding. 6. The court is further of the opinion that said language does not apply to the space occupied by the lessee as office space and lobby space and that lessee is therefore not liable therefor. 7. The court is further of the opinion that the parties have a right to have a jury determine the facts in reference to the amount owing by the lessee to the lessor for the sums received, if any, from the dining room, and the value of the space occupied by the lessee, by himself and members of his family. 8. In the controversy as to the use of, as good or better materials, being used in alternations made, the court is of the opinion that section 10 of the contract speaks for itself and that where materials, if any, were used in the alternations, section 10 should be complied with. 9. The court further finds that a change in the lobby by removal of a partition (which did not include any change in the floor) would not place the burden on the lessee of replacing the floor with other material. 10. The court further finds that there has been no such breach of the lease as would justify notice of eviction, the plaintiff having made deposit with the clerk of this court to cover the percentage of receipts from the space in controversy. 11. No satisfactory proof having been adduced that there is now any just complaint with respect to the accounting system, no ruling is made with respect to the controversy concerning this question. 12. The court further finds that there is no sufficient proof to justify any ruling as to a slander of the title of petitioner by the defendant W. H. Shippen, individually or as agent for the other defendant, Mrs. Helena J. Shippen, nor that the said defendant, W. H. Shippen, has undertaken to interfere unduly with the operation of the property. 13. The demurrers of the defendant are hereby overruled. 14. It is further considered, ordered, and adjudged by the court that the defendant be enjoined from giving any notice of eviction or cancellation of the lease, the subject-matter of the suit, and the injunction is hereby granted, as above stated, as to the matters covered by the *Page 66 
pleadings herein, and especially as set out in the paragraphs numbered 2 and 3 in the letter from defendant to the plaintiff, quoted in paragraph 2 of plaintiff's amendment filed April 16, 1945. 15. The amendments offered by the plaintiff are allowed and ordered filed."
The lessee, plaintiff below (plaintiff in error here in the cross-bill of exceptions), excepted to paragraph 4 of the above order, upon the ground that "a proper construction of the lease would exclude all receipts from the dining room where rented by the plaintiff lessee, for the reason that the words, `gross room and apartment receipts,' have reference only to those portions of the building which are occupied by tenants for living quarters. The lessee further excepted in the cross-bill, to the said ruling upon the additional ground that, had it been intended by the contracting parties that receipts from the dining room should be included within the purview of the percentage clause, such provision should have been incorporated in the instrument. The lessee further excepted to the said ruling upon the ground that the evidence disclosed that receipts from the space occupied as a dining room, in property such as that in controversy, by custom of the trade are not accounted for under the denomination `gross room and apartment receipts' in the lease contract." The lessee further excepted to paragraph 5 of said order "upon the ground that the terms of the written contract, referring only to receipts, could not and should not include the rental value of the rooms occupied by the lessee while acting as manager of the hotel, from which room so occupied no `receipts' were ever obtained. The lessee further excepted to the said ruling upon the ground that the undisputed evidence showed that the custom of the trade was to furnish living quarters, without cost, to the manager and to a housekeeper, and that W. J. Folsom was acting as manager of the hotel and his wife was acting as superintendent of housekeeping; and the evidence further disclosed that the occupancy of the space so used was not an unreasonable occupancy for the purposes intended."
1. The first and second divisions of the syllabus do not seem to require elaboration. This is the first case in this court involving the declaratory judgment statute, *Page 67 
and some general observations on the nature and character of the act would seem to be in order. Prior to its approval on February 12, 1945, a distinguished member of the Savannah bar, Robert M. Hitch, in a paper published in the November, 1944, issue of the Georgia Bar Journal, used this language: "To advocate, at this late date, the cause of the declaratory judgment procedure is somewhat akin to a defense of the automobile as an efficient and workable machine for everyday transportation; the airplane as a vital and integral unit of the modern army; and the radio as an inexpensive and effective instrument for homespun entertainment and the dissemination of news and varying political beliefs. In this sphere of legal procedure, the day of the pioneer is over; the early reluctance of the judiciary to receive it as a constitutional means of dispensing efficient and prompt justice to litigants has largely evaporated, and the bar itself now welcomes it as a useful and effective tool in its legal workshop." Our General Assembly having passed such a statute, it is highly important to clearly determine its meaning, scope, and fundamental purpose. In the case of Robinson v. Kerrigan,151 Cal. 40 (90 P. 129, 12 Ann. Cas. 829, 121 Am. St. R. 90), the court uses this language: "The refinements of civilized life, and the necessity for the orderly regulation, determination, and protection of human affairs and rights of property, have long required the extension of the judicial power beyond the settlement of controversies which have actually arisen, so as to include the function of providing security against disputes and claims which may arise." In a textbook by Walter H. Anderson on Declaratory Judgments, page 11, we find this language: "Doubtless it was designed to afford security and relief against uncertainty and to guide parties to a contract or occupying other legal or jural relations as to their future conduct with a view to avoid litigation, rather than in aid of it, and to settle and fix rights at a time before there had been breaches of contracts, violation and disregard of rights of others, and thus promote peace, quiet, and justice, with the ultimate end always constantly in view that one of the chief purposes is to declare rights rather than to execute them." Reverting to the article by Mr. Hitch, he quotes the following aphorism: "Under the present law you take a step in the dark and then turn on the light to see if you stepped into a hole. Under the declaratory judgment *Page 68 
law you turn on the light and then take the step." In harmony with this idea, Mr. Anderson in the work by him, referred to, uses this language on page 12: "It should not be supposed, however, that the Declaratory Judgment Act was designed to supplant existing remedies or to usurp fixed jurisdiction in other tribunals, but it is an alternative or additional remedy to facilitate the administration of justice more readily. Some courts, however, have fallen into the erroneous notion that the Declaratory Judgment Act was designed to supply remedies for deficiencies in the judicial system." As we understand the beneficent purposes and intent of the act, it was not intended in some ambiguous way to blot out "at one fell swoop" innumerable rights and privileges bestowed by the Code and by the fundamental principles of law, but was intended by the very meaning and concept of the word to give additional protection to persons who may become involved in an actual justiciable controversy, in that they differ between themselves as to what their rights are, and who wish to find them out before taking some dangerous step which might or might not be authorized. It would be hard to criticize the beneficent purpose of such a remedial statute as thus employed.
2. As to the correctness of the construction by the trial judge of the several features of the contract, we think that little, if anything, can be added to the mere setting forth of the several propositions embodied in the statement of facts and the clearcut and forthright judgments rendered thereon, other than with respect to the holding made by section five of the decree. This holding was as follows: "The court is further of the opinion that the language quoted in paragraph 4 with reference to percentage should and does apply to any space occupied by the lessee and members of his family for living quarters, and that the terms of the written contract should not be allowed to be varied by any custom of the trade to the contrary notwithstanding. The court is of the opinion that the plain language of the contract requires this holding." The language of paragraph 4 of the lease referred to in this section of the opinion, with respect to percentage rental over and above the minimum guaranteed rental, is as follows: "A percentage of the gross room and apartment receipts of the lessee from the operation of said hotel apartment in excess of fifty-eight thousand eight hundred ($58,800.00) dollars." *Page 69 
It appears from the evidence that during the first several months of the lease there was a third person (Black) who acted as manager, and that he occupied two rooms, rent free. The correspondence does not appear to indicate that any controversy arose as to the propriety of such conduct. The controversy arose when the lessee sought the aid of the landlord in ousting a tenant occupying five rooms, which it was thought, but for the rules of the O. P. A., could be more advantageously disposed of, and the lessee, in order to obtain possession, made affidavit that he wished to occupy these five rooms for himself and family. The evidence is uncontroverted that it is the universal local custom in Atlanta for a lessee manager of such property, holding under a percentage basis, to have the use of not less than two rooms free of any such charge, although the evidence with respect to the Candler Hotel is not in point, since the lease itself so provided in that case. While "the custom of any business or trade shall be binding only when it is of such universal practice as to justify the conclusion that it became, by implication, a part of the contract" (Code, § 20-704 (3)), and it is also true that such custom cannot be used to contradict the express terms of the contract itself (Vardeman v. Penn Mutual Life Insurance Co.,125 Ga. 117 (2), 54 S.E. 66, 5 Ann. Cas. 221; Colfax GinCo., v. Buckeye Cotton Oil Co., 24 Ga. App. 610,101 S.E. 697), it does not appear in the instant case that the language of the quoted provision of the contract as to the "gross room and apartment receipts" excludes by its terms the operation of such proven universal custom, but on the contrary it is wholly silent on that question. Accordingly, we think that, under the undisputed evidence at the time of the interlocutory hearing, the decree of the court was in this respect erroneous.
Judgment affirmed in part, and reversed in part on both themain bill and the cross-bill. All the Justices concur.