319 Ga. 89
FINAL COPY

S24A0599. COBB COUNTY v. FLOAM et al.

PETERSON, Presiding Justice.

"Courts are not vehicles for engaging in merely academic debates or deciding purely theoretical questions. We 'say what the law is' only as needed to resolve an actual controversy." *Sons of Confederate Veterans v. Henry County Bd. of Commrs.*, 315 Ga. 39, 39 (880 SE2d 168) (2022) ("*SCV*"). This case presents an actual controversy; the Cobb County Commission has asserted an unprecedented power to change acts of the General Assembly, and members of the Cobb community have made serious arguments that the County's action was unconstitutional. But we are not empowered to decide those arguments merely because an actual controversy exists; the plaintiffs before us must also seek relief of the right kind. And the relief sought here is not relief that the plaintiffs can receive even if they are right about the unconstitutionality of the County's action. Accordingly, their claim must be dismissed.

David and Catherine Floam sought a declaratory judgment that the Cobb County Board of Commissioners acted unconstitutionally when it passed an amendment ("BOC Amendment") changing commission district boundaries that had been enacted by the General Assembly in 2022. The trial court ruled for the Floams, concluding that the BOC Amendment exceeded the County's Home Rule powers under Article IX, Section II, Paragraph I of the Georgia Constitution (the "Home Rule Paragraph"). Cobb County appeals, arguing three grounds for reversal: (1) the Floams lacked constitutional standing because they did not allege an individualized injury; (2) the Floams could not pursue declaratory relief because they did not show they faced uncertainty as to their future conduct; and (3) the trial court erred on the merits in concluding that the BOC Amendment was barred by provisions of the Home Rule Paragraph. We conclude that although the Floams had constitutional standing, they did not show any uncertainty as to their future conduct that warranted declaratory relief. Therefore, the trial court erred in granting such relief, and we reverse. We do

2

not reach the merits of the constitutional arguments.

The record shows the following.[1] In early 2022, the General Assembly passed, and the Governor signed, Act 562, which revised district boundaries for Cobb County commission districts. Act 562 was supported by less than a majority of the County's legislative delegation and departed from the usual "local courtesy" tradition in which a majority of a county's legislative delegation determines which local redistricting maps are enacted through local legislation. Unhappy with this, the Cobb County Board of Commissioners ("BOC") in October 2022 passed the BOC Amendment to amend Act 562 and create new maps identical to those unsuccessfully proposed by the majority legislative delegation. The BOC Amendment provided that it was effective January 1, 2023, so the November 2022 elections were conducted using the General Assembly's maps.

---

[1] Although this case comes before us on a grant of summary judgment to the Floams, the parties do not dispute the relevant facts. Compare *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) ("In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." (citation and punctuation omitted)).

In the summer of 2023, David and Catherine Floam joined an existing lawsuit seeking declaratory relief against Cobb County.[2] They sought a declaratory judgment that the BOC Amendment was unconstitutional under the Home Rule Paragraph and that Act 562 as passed by the General Assembly is legal and binding; they also sought an order declaring that, until the validity of the BOC Amendment was determined, the County must not hold any elections using the County Map and that the County should compel the Board of Elections to act accordingly. In their complaint, the Floams alleged that the General Assembly's map placed them in District 1, they voted in that district in the November 2022 general elections, and the BOC Amendment placed them in District 3. The Floams argued that the BOC Amendment affected them in the following ways: their commissioner is different from the one they voted for; their legal districts are unknown to them; they have voted and intended to vote in future elections; they have an interest in

---

[2] The lawsuit was initially filed by Cobb County Commissioner Keli Gambrill, the trial court dismissed her claims for lack of standing, and she ultimately did not appeal that dismissal.

voting in a legal district; and they have an interest in having the laws of this State properly executed and the public duty in question enforced. The Floams alleged that the County had a public duty to follow the rule of law and to enforce and implement a legal district map so the Cobb County Board of Elections could conduct a lawful election, and that voters had a public right to "free and fair elections" and a public right to vote in an election based on "lawfully created and lawfully implemented district maps."

The County filed a motion to dismiss, arguing, among other things, that the Floams lacked standing. The trial court denied the motion, concluding that the Floams had standing because they alleged an individualized injury flowing from the constitutionality of the BOC Amendment. The trial court concluded that because the BOC Amendment changed the Floams' district after they voted in another one, "if the [BOC Amendment] is determined to be unconstitutional, . . . then the Floams have identified a harm that is concrete, actual and particular to them." The court also concluded that the lawsuit was consistent with the purpose of a declaratory

5

judgment, because "the Floams' suit seeks relief from the uncertainty and insecurity of their voting rights and voter status in light of the disputed districts."

The trial court later granted the Floams' motion for summary judgment and denied the County's cross-motion for summary judgment. At issue in this appeal, the parties disputed whether the BOC Amendment was within the County's authority under the Home Rule Paragraph.

The trial court concluded that Cobb County's BOC Amendment was barred by two exceptions to the Home Rule Paragraph and was, therefore, an unconstitutional exercise of authority under the County's constitutional Home Rule powers.

The County appealed. In response, the Floams filed motions to expedite the appeal and to lift the supersedeas stay imposed by OCGA § 5-6-46 (a). The County opposed both motions. We granted the Floams' motion to expedite the appeal but held in abeyance their motion to lift the stay. We held oral arguments on April 17, 2024.

1. On appeal, the County argues that the Floams do not have

constitutional standing to challenge the constitutionality of the BOC Amendment because they were required to establish an individualized injury. The County argues that their claims are based only on generalized grievances and not on particularized harms. We disagree; to challenge county legislative action, the Floams needed only to establish standing as community stakeholders interested in their local government following the law, and they have done that.

Standing is a jurisdictional prerequisite necessary to invoke a court's judicial power under the Georgia Constitution. See Ga. Const. of 1983, Art. VI, Sec. I, Par. I ("Judicial Power Paragraph"); *SCV*, 315 Ga. at 44-45 (2) (a). As we recently explained in *SCV*, it has long been the law that "[w]here a public duty is at stake, a plaintiff's membership in the community provides the necessary standing to bring a cause of action to ensure a local government follows the law." Id. at 61 (2) (c) (iii). We arrived at that conclusion based on precedent showing that for nearly 100 years prior to the adoption of the 1983 Georgia Constitution, Georgia had allowed citizen, taxpayer, resident, or voter suits to challenge various county

7

and city actions without demonstrating a particularized injury because those community stakeholders had a cognizable interest in having their government follow the law. See id. at 53-61 (2) (c) (collecting cases).

The County argues that this standing rule does not apply because the Floams are challenging the constitutionality of the BOC Amendment. In support, the County relies on long-standing precedent that, in order to challenge the constitutionality of *state* statutes, the Georgia Constitution requires a more particularized injury similar to the federal Article III injury-in-fact requirement. See *SCV*, 315 Ga. at 54 (2) (c) n.13 (citing cases). This Court early on recognized that our judicial review was sometimes precluded in a way that is akin to the Article III injury-in-fact requirement. We first held in 1884 that

> [c]omity to a co-ordinate department of the government requires, according to many decisions of this and other courts, that causes shall not be disposed of upon constitutional grounds when it is possible to avoid such questions, without a sacrifice of the rights of parties[.]

*Bd. of Ed. of Glynn County v. Mayor of Brunswick*, 72 Ga. 353, 354-

8

355 (1884) (involving challenge to state legislation that created board of education and changed funding procedure). Two years later, we again emphasized that separation of powers precluded our review of a challenge to a state statute regarding a liquor law, concluding that it is only when "the law operates upon the private property of an individual, and that is seized or destroyed or confiscated, or the individual is arrested and indicted thereunder for its violation" can the "portion of the law thus affecting his private property and personal liberty . . . be assailed by him as unconstitutional or illegal[.]" *Scoville v. Calhoun*, 76 Ga. 263, 269 (1886). It soon became well settled that a court "will not listen to an objection made to the constitutionality of an act by a party whose rights it does not affect, and who has, therefore, no interest in defeating it." *Reid v. Mayor, etc. of Eatonton*, 80 Ga. 755, 757 (6 SE 602) (1888) (citation and punctuation omitted). These cases show the particularized injury requirement for challenges to state statutes has long been rooted in principles of separation of powers. See Ga. Const. of 1983, Art. I, Sec. II, Par. III ("The legislative, judicial, and

9

executive powers shall forever remain separate and distinct; and no person discharging the duties of one shall at the same time exercise the functions of either of the others except as herein provided.").

But a county commission is not a part of State government, much less a branch co-equal with the State's judicial branch. For that matter, the constitutional separation of powers principle does not even apply to counties or municipalities. See *Bldg. Auth. of Fulton County v. State of Ga.*, 253 Ga. 242, 247 (5) (321 SE2d 97) (1984) (adhering to cases decided prior to adoption of 1983 Constitution that held "that the constitutional provision applies only to the state" and concluding that just as the Separation of Powers Provision did not apply to municipalities, it also did not apply to county governments because "a county commission is both the executive and legislative branch"). Consequently, the animating reason to require a particularized injury to challenge *state* legislative actions is not present for challenges to county or municipality legislative actions.

Cobb County correctly argues that there is recent case law

10

from this Court seemingly imposing a particularized injury requirement for challenges to county ordinances. But a closer review of those cases shows that they are analytically unsound and cannot be squared with *SCV*. Even so, in only one case did our holding align with the County's argument, and we overrule that case today.

First, some of those cases uncritically imported without analysis the particularized injury required to challenge *state* actions. See, e.g., *Manlove v. Unified Govt. of Athens-Clarke County*, 285 Ga. 637, 638 (680 SE2d 405) (2009) (in evaluating challenge to county noise ordinance, citing *Feminist Women's Health Center v. Burgess*, 282 Ga. 433 (651 SE2d 36) (2007), which involved a constitutional challenge to state regulations governing Georgia's Medicaid program). But, as discussed above, the reason for requiring a particularized injury for state actions does not carry over to local governments.

Other cases imposing the particularized injury requirement to county ordinances did so on the basis of federal standing jurisprudence. See, e.g., *Polo Golf and Country Club Homeowners*

11

*Assn. v. Cunard*, 306 Ga. 788, 791 (1) (b) (833 SE2d 505) (2019) (citing case law that cited United States Supreme Court precedent and holding that the plaintiffs had standing to pursue declaratory relief against enforcement of county's stormwater ordinance where the "threat of an injury in fact" was "actual and imminent, not conjectural or hypothetical" (citation and punctuation omitted));[3] *Granite State Outdoor Advertising v. City of Roswell*, 283 Ga. 417, 418 (1) (658 SE2d 587) (2008) (applying federal standing jurisprudence to challenge of city sign ordinance);[4] see also *Grady v.*

---

[3] *Polo Golf* cited *Women's Surgical Center v. Berry*, 302 Ga. 349 (806 SE2d 606) (2017), which in addition to directly citing United States Supreme Court precedent on standing, also contained a "see also" citation to *GeorgiaCarry.Org v. Atlanta Botanical Garden*, 299 Ga. 26 (785 SE2d 874) (2016), but that case addressed whether a plaintiff could pursue declaratory relief (i.e., had statutory standing), not whether a plaintiff had standing under the Georgia Constitution. See *GeorgiaCarry.Org*, 299 Ga. at 28-31 (1).

[4] *Granite State* cited *Bo Fancy Productions v. Rabun County Bd. of Commrs.*, 267 Ga. 341, 344-345 (2) (a) (478 SE2d 373) (1996), as showing that "Georgia jurisprudence" was consistent with the federal case law cited in *Granite State*. See *Granite State*, 283 Ga. at 420 (1). It is unsurprising that *Bo Fancy* was consistent with federal case law because (1) it involved an appellant's attempt to block a county's enforcement of a *state* statute, which requires a particularized injury, and (2) it was a challenge based on First Amendment grounds. *Bo Fancy*, 267 Ga. at 344-345 (2) (a). Neither *Bo Fancy*, nor the case cited therein (*Stewart v. Davidson*, 218 Ga. 760, 764 (1) (130 SE2d 822) (1963)), is relevant here because neither involved constitutional challenges to county legislation. See *Bo Fancy*, 267 Ga. at 344-345 (2) (a).

*Unified Govt. of Athens-Clarke County*, 289 Ga. 726, 727 (1) n.1 (715 SE2d 148) (2011) (relying on *Granite State* and case law that relied on *Granite State* to conclude that appellant had "unquestioned standing to lodge a facial challenge to the provision of the [county] ordinance under which he was convicted, as he clearly suffered an 'injury in fact' when he was penalized"). None of these cases considered standing under the Georgia Constitution, and they were wrong to rely on federal standing jurisprudence to consider challenges to county ordinances, because "federal standing doctrine does not control" the nature of the state judicial power. See *SCV*, 315 Ga. at 46 (2) (a).

Moreover, these cases all post-date the adoption of the 1983 Constitution. As described above and discussed more fully in *SCV*, the Judicial Power Paragraph had a fixed meaning based on consistent and definitive precedent that allowed community

---

Moreover, *Granite State* was the only one of these cases to conclude that standing was lacking; the others all either failed to address standing or found standing was present, and so have little precedential force on this point. And there was no indication in *Granite State* that the plaintiff would have cleared *SCV*'s community stakeholder standing threshold, either.

stakeholders to sue to challenge county action. The cases post-dating the 1983 Constitution cannot change the meaning of the Judicial Power Paragraph. See *Olevik v. State*, 302 Ga. 228, 235 (2) (c) (i) (806 SE2d 505) (2017) ("[T]here are few principles of Georgia law more venerable than the fundamental principle that a constitutional provision means today what it meant at the time that it was enacted.").[5]

---

[5] Because *Granite State* is the only case that held that the plaintiffs lacked a particularized injury to challenge a county ordinance, it is the only case we need consider whether to overrule. Under the doctrine of stare decisis, we consider whether to retain incorrect precedent by balancing "the importance of having the question *decided* against the importance of having it *decided right*." *State v. Burns*, 306 Ga. 117, 123 (2) (829 SE2d 367) (2019) (citation and punctuation omitted; emphasis in original). In making this determination, we often consider, among other things, "the age of precedent, the reliance interests at stake, the workability of the decision, and, most importantly, the soundness of its reasoning." *Olevik*, 302 Ga. at 244-245 (2) (c) (iv) (citation and punctuation omitted). Also relevant is the extent to which the decision was the result of actual legal reasoning. See *Johnson v. State*, 315 Ga. 876, 887-888 (885 SE2d 725) (2023) (stare decisis did not require retaining a decision that was "unreasoned (bordering on accidental)" and "in conflict with our own decisions"); *Ammons v. State*, 315 Ga. 149, 171-172 (1) (880 SE2d 544) (2022) (Pinson, J., concurring) ("If the past decision in question is unreasoned, or if it disregards the basic legal principles that courts use to do law, the argument for overruling is easier to make.").

We have already explained that *Granite State* did not offer any reasoning for importing the particularized injury requirement applicable to challenges to statutes. And we have typically applied stare decisis with less force to constitutional decisions, meaning that there is "less room . . . for the other

Here, the Floams' standing is firmly established. Because the Floams are residents of Cobb County, they are community stakeholders in that government. As we made clear in *SCV*, community stakeholders have standing to enforce a public duty. *SCV*, 315 Ga. at 60 (2) (c) (iii). The entire dispute in this case is about that public duty. In enacting Act 562, the General Assembly set the electoral district lines for Cobb County. Although the parties dispute

factors to preserve [incorrect precedent]." *Olevik*, 302 Ga. at 245 (2) (c) (iv). None of the remaining factors support retaining *Granite State*'s rule. It was decided 16 years ago, and we have overruled decisions much older than that. See, e.g., *Southall v. State*, 300 Ga. 462, 468 (1) (796 SE2d 261) (2017) (overruling 45-year-old precedent); *State v. Hudson*, 293 Ga. 656, 661-662 (748 SE2d 910) (2013) (overruling 38-year-old precedent). There are no reliance interests at stake, and *Granite State* has not become "deeply entrenched in our jurisprudence." See, e.g., *Frett v. State Farm Employee Workers' Compensation*, 309 Ga. 44, 60 (3) (c) (844 SE2d 749) (2020) (in considering age of precedent and reliance interests, noting that the precedent at issue had not "become deeply entrenched in our jurisprudence"); *Savage v. State of Ga.*, 297 Ga. 627, 641 (5) (b) (774 SE2d 624) (2015) (substantial reliance interests are most common in contract and property cases where parties may have acted in conformance with existing legal rules in order to conduct transactions). Finally, the rule articulated in *SCV* is much more workable than the particularized-injury rule similar to the injury-in-fact rule that is part of federal standing jurisprudence. See, e.g., *Sierra v. City of Hallandale Beach*, 996 F3d 1110, 1115-1117 (11th Cir. 2021) (Newsom, J., concurring) (noting difficulty and inconsistency in applying the injury-in-fact requirement). Because none of the stare decisis factors weigh in favor of retaining *Granite State*, we overrule it. And we likewise disapprove any other cases to the extent that they could be read to impose a particularized injury requirement to challenge the constitutionality of county actions, legislative or otherwise.

whether Cobb County had the authority to revise those district lines, it could only do so if the Home Rule Paragraph allowed. Whether this case is framed as a duty to follow Act 562 or a requirement to follow the Home Rule Paragraph, in either case, the heart of the case concerns Cobb County's duty to follow the law. This is sufficient to confer standing for the Floams' challenge to the BOC Amendment. See *SCV*, 315 Ga. at 61 (2) (c) (iii) ("Where a public duty is at stake, a plaintiff's membership in the community provides the necessary standing to bring a cause of action to ensure a local government follows the law."); see also *Williams v. DeKalb County*, 308 Ga. 265, 272 (3) (b) (i) (840 SE2d 423) (2020) ("Williams, as a citizen of DeKalb County, generally has standing pursuant to OCGA § 9-6-24 to bring a claim seeking to require a public official to perform the public duties that the General Assembly has conferred upon that official."); *League of Women Voters of Atlanta-Fulton County v. City of Atlanta*, 245 Ga. 301, 303-304 (1) (264 SE2d 859) (1980) ("We hold that the plaintiffs have standing to bring this suit. In this state, it is established that a citizen and taxpayer of a municipality, without

16

the necessity for showing any special injury, has standing" to challenge city council committee appointments as ultra vires actions by municipal officer.).[6]

2. The County next argues that even if the Floams have constitutional standing, they cannot obtain a declaratory judgment because they do not face the requisite uncertainty about future decisions they may face. We agree.

Under the Declaratory Judgment Act, the courts of this State are authorized "to declare rights and other legal relations of any interested party petitioning for such declaration" "[i]n cases of actual controversy" and "in any civil case in which . . . the ends of justice [so] require[.]" OCGA § 9-4-2 (a), (b). Although the Act is to

---

[6] The County also argues that the Floams could not assert taxpayer standing because redistricting legislation does "not create an illegal debt, cause illegal expenses to be incurred, result in increased taxes, or misappropriate funds." The County cites *SCV* for this proposition, but *SCV* did not hold that a plaintiff's interest in having their local government follow the law was dependent on illegal expenditures; indeed it recognized that one's membership in the community sometimes is sufficient to confer standing to sue a local government "even in cases where no tax dollars [are] directly implicated." *SCV*, 315 Ga. at 59 (2) (c) (ii). In any case, the County's argument ignores the fact that there are expenses incurred by preparing for and conducting elections, which are predicated upon electoral district lines; if the redistricting is illegal, taxpayers face a substantial risk of injury as a result.

be "liberally construed and administered[,]" the text of the Act also plainly states that its purpose "is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations[.]" OCGA § 9-4-1. This language has been part of the Act since it was first enacted in 1945. See Ga. L. 1945, pp. 137, 139, § 13. In one of the first cases interpreting the Act, this Court made the following observation:

> Doubtless [the Act] was designed to afford security and relief against uncertainty and to guide parties to a contract or occupying other legal or jural relations as to their future conduct with a view to avoid litigation, rather than in aid of it, and to settle and fix rights at a time before there had been breaches of contracts, violation and disregard of rights of others, and thus promote peace, quiet, and justice, with the ultimate end always constantly in view that one of the chief purposes is to declare rights rather than to execute them.

*Shippen v. Folsom*, 200 Ga. 58, 67 (1) (35 SE2d 915) (1945) (citation omitted). We explained the Act was designed to "give additional protection to persons who may become involved in an actual justiciable controversy, in that they differ between themselves as to what their rights are, and who wish to find them out before taking

18

some dangerous step which might or might not be authorized." Id. at 68 (1).

Since that initial observation about the Act's design, this Court has consistently and repeatedly focused on whether an adjudication of rights was necessary in order to help or protect the petitioner or plaintiff. Early on, we said that a petition for declaratory relief will lie only

> when there be some fact or circumstances which necessitate a determination of disputes, not merely for the purpose of enforcing accrued rights, but in order to guide and protect the *petitioner* from uncertainty and insecurity with respect to the propriety of some future act or conduct which is properly incident to his alleged rights, and which future action without such direction might reasonably jeopardize his interest.

*Aldridge v. Fed. Land Bank of Columbia*, 203 Ga. 285, 291 (3) (46 SE2d 578) (1948) (citations and punctuation omitted; emphasis added); see also *City of Atlanta v. Hotels.com*, 285 Ga. 231, 234-235 (674 SE2d 898) (2009) ("[T]o state a claim for declaratory judgment, a party need only allege the existence of a justiciable controversy in which future conduct depends on resolution of uncertain legal

19

relations.").

Since that early construction of the Act, our holdings have repeatedly rejected claims for declaratory judgment when a declaration of rights would not direct the plaintiff's *future* conduct or involved only a determination of rights that had already accrued. See, e.g., *Clein v. Kaplan*, 201 Ga. 396, 406 (1) (40 SE2d 133) (1946) ("petition did not state a proper cause for declaratory relief" because it was "nothing more than a simple creditor's action, asking the distribution of a corporation's assets in equity"); *Gibbs v. Forrester*, 204 Ga. 545, 549 (2) (50 SE2d 318) (1948) (action to declare that the plaintiff and the defendant were not husband and wife failed because the only issue was one of fact known to the parties and the petitioner was "not asking the court for any light before taking a step in the dark"); *Sumner v. Davis*, 211 Ga. 702, 703 (2) (88 SE2d 392) (1955) (declaratory judgment action should have been dismissed because the petitioner alleged no facts showing that an "adjudication of their rights [was] necessary in order to relieve them from the risk of taking any future undirected action incident to their

20

rights, which action without direction would jeopardize their interest"); *Ga. Southern & Florida Ry. Co. v. State Highway Dept.*, 216 Ga. 812 (120 SE2d 122) (1961) (declaratory judgment did not lie where the rights of the parties had already accrued and where the petitioner alleged with certainty and definiteness that it owned the land being allegedly appropriated by the highway department); *Henderson v. Alverson*, 217 Ga. 541 (123 SE2d 721) (1962) (declaratory judgment action could not be maintained where plaintiff failed to allege need for guidance as to his future conduct but rather merely sought declaration that constitutional amendment was void); *Milton Frank Allen Publications v. Ga. Assn. of Petroleum Retailers*, 219 Ga. 665, 670 (1) (a) (135 SE2d 330) (1964) (declaratory action seeking to invalidate a contract was improper where the petitioner was not uncertain as to any rights under contract, had already "elected its course" by taking certain actions to renounce the contract as invalid and unenforceable, "and hence ha[d] no need for guidance as to what step to take"); *Salomon v. Cent. of Ga. Ry. Co.*, 220 Ga. 671, 672 (1) (141 SE2d 424) (1965)

21

("[w]hatever rights the plaintiffs may have been denied . . . [or] acquired" by the stockholders' meeting, there was no cause of action for declaratory relief because the plaintiffs' rights had already accrued and there were no factual allegations showing that an adjudication was "necessary in order to relieve the plaintiffs from the risk of taking any future undirected action incident to their rights, which action without direction would jeopardize their interests"); *Womble v. State Bd. of Examiners in Optometry*, 221 Ga. 457, 459-460 (1) (145 SE2d 485) (1965) (State Board's claim that declaratory judgment was "necessary to relieve the parties 'from the risk of taking any future undirected action incident thereto,'" was conclusory and totally unsupported by any allegations of facts or circumstances showing any risk or uncertainty); *Fourth Street Baptist Church of Columbus v. Bd. of Registrars*, 253 Ga. 368, 369 (1) (320 SE2d 543) (1984) (claims for declaratory relief were properly dismissed where plaintiffs "face[d] no uncertainty or insecurity with respect to their voting rights, nor any risk stemming from undirected future action"); *Morgan v. Guar. Nat. Cos.*, 268 Ga. 343,

346 (489 SE2d 803) (1997) ("Because [the petitioner] has not demonstrated a need for a legal judgment that would control its future action, in that its defenses to any claim under the policy can be presented when suit is entered . . . , a declaratory judgment action was inappropriate."); *Baker v. City of Marietta*, 271 Ga. 210, 214 (1) (518 SE2d 879) (1999) (trial court erred in ruling on declaratory judgment action where plaintiff did not assert that it faced a risk of taking future undirected action and defendant argued that only the plaintiff sought declaratory relief); *Gwinnett County v. Blaney*, 275 Ga. 696, 703-704 (1) (572 SE2d 553) (2002) (petition seeking declaration that petitioner was entitled to payment of incurred legal fees under a county indemnification plan was not authorized because the petitioner sought a determination after legal expenses had already been incurred and a finding that plan would have covered the petitioner in the lawsuit would not "portend, much less determine, any questions of [petitioner's] coverage" in future legal actions against him); *SJN Props. v. Fulton County Bd. of Assessors*, 296 Ga. 793, 803 (2) (b) (iii) (770 SE2d 832) (2015) (declaratory relief

23

properly denied where claimant failed to show that it faced any uncertainty or insecurity as to any of its own future conduct, but rather sought an adjudication that would impact the future conduct of the defendant); *Love v. Fulton County Bd. of Tax Assessors*, 311 Ga. 682, 695-696 (3) (c) (859 SE2d 33) (2021) (appellants' claim for declaratory relief was properly dismissed because, even if the agency's decision was wrong, the appellants faced no uncertainty as to an alleged right), disapproved of in part on other grounds by *Bray v. Watkins*, 317 Ga. 703, 704-705 (895 SE2d 282) (2023).

Applying that framework here, the Floams' allegations are insufficient to support declaratory relief. The thrust of the Floams' "uncertainty" is that they do not know in which district they reside, but this is not the kind of uncertainty required by our case law. A request for declaratory relief is a request for "prospective relief—relief from the threat of wrongful acts and injuries yet to come." *Lathrop v. Deal*, 301 Ga. 408, 434 (III) (C) (801 SE2d 867) (2017). The Floams allege several past injuries resulting from the BOC Amendment, but they have not alleged threatened future injury that

a declaration would prevent them from suffering.

The Floams alleged in their complaint that they should belong in District 1 per the General Assembly's redistricting, they voted in that district in November 2022, and as a result of the allegedly illegal BOC Amendment, they are represented by a commissioner different from the one for whom they voted. The Floams also assert on appeal that they are uncertain whether their November 2022 votes "functionally counted."

It is not clear what the Floams mean by the uncertainty as to whether their votes "functionally counted." Regardless, their *past* votes have no relation to any uncertainty as to their *future conduct.* The Floams frame their right as the right to be represented by the person for whom they voted. But any violation of such a right occurred once the BOC Amendment took effect, and the Floams have not alleged how that past violation creates uncertainty as to their future conduct. They merely argue on appeal that they cannot "confidently participate in their government or rely on their commissioner to represent their interests because they would not

know who their lawful commissioner is for the next [two] years." No doubt, everyone has a right to participate in their government, contact their representative, and even campaign or support a candidate, but the Floams do not point to any authority for the proposition that they have a right to do so "confidently." And nothing about the BOC Amendment infringes on their right to political participation. The Floams may be uncertain about which county commissioner should represent them, but they do not show any future action they risk taking based on this uncertainty.

Their uncertainty regarding whether their 2022 votes "functionally counted" or whether they can participate in their local government affairs "confidently" is simply insufficient to warrant declaratory relief. See *City of Atlanta v. Atlanta Independent School System*, 307 Ga. 877, 880 (838 SE2d 834) (2020) ("[T]he relief sought by a plaintiff must have some *immediate legal effect* on the parties' conduct, rather than simply burning off an abstract fog of uncertainty." (emphasis added)).

With respect to future elections, no declaratory relief lies here

26

either. The Floams may be uncertain as to whether they lawfully reside in District 1 or District 3, but this uncertainty, without more, is insufficient to support a declaration. The Floams must allege that *they* are at risk of taking some undirected future action incident to their rights and that such action might jeopardize their interests. They have failed to do so.

The Floams alleged in their complaint that they will vote in future elections, including those for the BOC, and there is no allegation that they will not be allowed to vote in such elections. The Floams allege that they might vote in the "wrong" district, but they know what district they are assigned under the BOC Amendment; they have no decision to make about where to vote.

By seeking a determination on the validity of the BOC Amendment, the Floams are not asking for guidance with respect to actions they might take or alleging that they risk taking some dangerous step that may or may not be authorized. The Floams' uncertainty, then, does not concern their own future conduct. Instead, by asking for a declaration that the BOC Amendment was

illegal, the Floams are merely attempting to enforce rights that had already accrued and attempting to direct the future actions of the County, which is insufficient to state a claim for declaratory relief. See *Williams*, 308 Ga. at 271 (3) (a) (citizen could not pursue declaratory relief to challenge legality of county ordinances because he did not "allege or argue that he face[d] any uncertainty or insecurity as to his own future conduct"); *SJN Props.*, 296 Ga. at 803 (2) (b) (iii) (claimant failed to show that it faced any uncertainty or insecurity as to any of *its own* future conduct and instead sought an adjudication that would impact the future conduct of the defendant); *Sapp v. ABC Credit & Inv. Co.*, 243 Ga. 151, 159 (5) (253 SE2d 82) (1979) (petitioner did not show that a declaratory judgment was "necessary to relieve her of the risk of taking some future undirected action incident to her rights which might jeopardize her interest" when she had already acted when her petition was filed); see also *Drawdy v. Direct Gen. Ins. Co.*, 277 Ga. 107, 109 (586 SE2d 228) (2003) ("The law is well established that declaratory judgment is not available where a judgment cannot guide and protect the petitioner

with regard to some future act[.]" (citation and punctuation omitted)); *Venable v. Dallas*, 212 Ga. 595, 595 (94 SE2d 416) (1956) ("[O]ne walking in full daylight, who knows where he is going and is confident of the course he is pursuing, has no need either of artificial light or judicial advice."); *Shippen*, 200 Ga. at 68 (1) (the Act is intended to "give additional protection to persons who may . . . wish to find [their rights] out before taking some dangerous step which might or might not be authorized").

To be clear, the fact that there are two competing maps does create significant uncertainty for many.[7] But the Floams have not shown that this uncertainty affects *their* future conduct. They have not established that they are insecure about some future action they plan to take, and they have not shown a need to declare rights upon which their future conduct depends. See *Sexual Offender*

---

[7] In its amicus brief, the Cobb County Board of Elections and Registration ("BOER") pointed to its own uncertainty as to whether the BOC Amendment was valid and asked for some resolution in time for it to implement a redistricting map before the qualifying period that began on March 2, 2024. Given BOER's duties in administering elections, that is the kind of uncertainty that would support a declaratory judgment. But BOER is not a party to this case, and the Floams cannot use a nonparty's uncertainty to establish their own standing.

*Registration Review Bd. v. Berzett*, 301 Ga. 391, 393 (801 SE2d 821) (2017) ("The proper scope of declaratory judgment is to adjudge those rights among parties *upon which their future conduct depends*." (citation and punctuation omitted; emphasis added)). Instead, the Floams' claims boil down to an attempt to enforce accrued rights and guide the future conduct of the defendants or the BOER. Because the Floams have not shown that they qualify for declaratory relief, we reverse. We express no view about the correct resolution of the very serious constitutional issues with the BOC Amendment.[8]

*Judgment reversed. All the Justices concur.*

BETHEL, Justice, concurring.

I agree with the opinion of the Court and join it in full. I write separately to note my concern about the *possible* effect of further

---

[8] Although we do not reach the issue, we are thankful for the amicus brief filed by the Attorney General, which addressed the issue of Cobb County's authority under the Home Rule Paragraph to pass the BOC Amendment. The Attorney General took no position on the Floams' standing.

30

delay in reaching the merits of the Cobb County Commission's effort to redistrict itself, which it seems will inevitably be reached. A delayed loss by Cobb could give rise to calamitous consequences inflicting serious expense and practical hardship on its citizens. Accordingly, I urge Cobb to act with all dispatch in obtaining a final answer on the legal merits of its chosen path.

I offer the following illustration not to suggest what will happen, but only to show what *might* happen, assuming Cobb's merits argument ultimately fails.[9] It is clear that Cobb has asserted a novel application of the constitutional Home Rule powers that has never been decided by this Court, though the only Georgia court to reach the merits of Cobb's argument found it untenable. We concluded today that the present action is not the proper vehicle by which to litigate this issue. But sooner or later, a proper party will almost certainly bring a proper claim, and a court will decide the

---

[9] While this hypothetical presumes that Cobb's argument on the merits ultimately fails, I do not suggest that will be the likely outcome, and I reiterate that is not a question we decide here. Given the merits arguments presented thus far, however, it seems fair to observe that Cobb has a substantial risk of losing and it seems unwise to ignore that risk.

novel issue raised in this case. A review of the record and the current posture of the Cobb County Commission suggests that an adverse merits decision for Cobb could feasibly result in at least one current Commission member to be found to lack residency in his or her district. And Cobb is currently conducting elections for two seats under the contested maps. Litigation during and even after those elections seems inevitable. But litigation takes time, and it is easily within the realm of possibility that several months could pass before such litigation is concluded, particularly if Cobb continues to pursue what could be interpreted as a deliberately leisurely litigation strategy.

Indeed, depending on the timeline of any future litigation, it would not be inconceivable for Cobb to find itself with three vacant Commission seats and the Commission unable to form a quorum, leaving its citizens without duly elected representation. To avoid these possibilities, it seems to me that Cobb has an interest in reaching a merits-based resolution as quickly as possible. I urge Cobb to act with all due haste in securing finality.

Decided May 9, 2024 — Reconsideration denied May 29, 2024.

Home rule; constitutional question. Cobb Superior Court. Before Judge Harris.

*H. William Rowling, Jr., Lauren S. Bruce, Elizabeth A. Monyak*, for appellant.

*Smith & Liss, Ray S. Smith III*, for appellees.

*Christopher M. Carr, Attorney General, Logan B. Winkles, Deputy Attorney General, Jonathan D. Loegel, Senior Assistant Attorney General, Zachary A. Mullinax, Assistant Attorney General; Stephen J. Petrany, Solicitor-General, Justine T. Golart, Deputy Solicitor-General; Haynie Litchfield Crane & White, Daniel W. White, Elarbee Thompson Sapp & Wilson, William A. Pinto, Jr.*, amici curiae.