**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**



SUPREME COURT OF GEORGIA
Case No. S24A0652

October 31, 2024

S24A0652. A. THOMAS JONES v. CITY OF ATLANTA.

Upon consideration, the deadline for a motion for reconsideration in this case has been revised. It is ordered that a motion for reconsideration, if any, must be filed no later than **4:30 pm on Wednesday, November 6, 2024**.

**SUPREME COURT OF THE STATE OF GEORGIA**
Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.
Witness my signature and the seal of said court hereto affixed the day and year last above written.

_____ , Clerk

In the Supreme Court of Georgia

Decided: October 31, 2024

S24A0652. JONES v. CITY OF ATLANTA.

COLVIN, Justice.

Appellant A. Thomas Jones contends that the City of Atlanta (the "City") imposes unlawful taxes on him and other customers of its Department of Watershed Management ("DWM") by means of two City ordinances. City ordinances 98-O-1920 and 98-O-1921 (collectively, the "Ordinances") levy charges on DWM's revenue and property that are deposited in the City's General Fund. The recitals of each ordinance suggest that the charge levied therein is meant to compensate the City for certain costs to it from its operations through DWM.

Appellant is a resident of the City and a DWM customer. He alleges in his complaint that the sums collected pursuant to the Ordinances (the "Disputed Charges") are paid by DWM customers,

2

that these sums grossly exceed the costs for which they purportedly compensate the City (the "Associated Costs"), and that these costs are instead satisfied by other monetary transfers from DWM. As such, Appellant alleges that the Disputed Charges are taxes which violate various provisions of the United States Constitution, the Georgia Constitution, the Georgia Code, and the City's Charter. Accordingly, Appellant filed suit against the City seeking declaratory and injunctive relief, as well as a tax refund and damages for himself and a putative class of other DWM customers with service addresses within the City's territorial limits.

The trial court initially dismissed Appellant's suit on procedural grounds, but that ruling was reversed in part by the Court of Appeals. See *Jones v. City of Atlanta*, 360 Ga. App. 152 (860 SE2d 833) (2021). Following remand, the City moved for judgment on the pleadings, and Appellant filed two motions for partial summary judgment. The trial court granted the City's motion and denied Appellant's motions in a single omnibus order. Appellant appeals the granting of the City's motion for judgment on the

3

pleadings and the denial of his motions for partial summary judgment, asserting numerous errors. These enumerations raise three central issues: (1) whether the Disputed Charges are paid by Appellant or DWM; (2) whether the Disputed Charges constitute taxes; and (3) if so, whether the Ordinances are lawful. As explained further below, we conclude that the trial court erred in granting the City's motion, but that it was correct to deny Appellant's motions for partial summary judgment. We accordingly affirm in part, vacate in part, and remand for further proceedings.

I. *Factual background.*

A. *The allegations in the Complaint.*

On review of the City's motion for judgment on the pleadings,[1] we begin with Appellant's allegations, as made in his Second Amended Complaint (the "SAC") and as supplemented by his first amendment to the SAC. We refer to these pleadings collectively as Appellant's "Complaint," which alleges the following.

---

[1] Appellant's motions for partial summary judgment are treated separately in Division III, infra.

1. *The parties and the Ordinances.*

Appellant is a resident of the City of Atlanta, and, at all times relevant to this litigation, he has been a retail water and sewer customer of DWM with a service address within the City's territorial limits.

As a customer of DWM, Appellant receives a monthly water and sewer bill. This bill contains a fixed "base charge" of $6.56 for water services and a separate base charge of $6.56 for sewer services. These monthly bills also include variable water and sewer charges determined by the amount of the customer's water and sewer usage, respectively. Because of the base charges, DWM customers within the City's limits are billed at least $13.12 even when they use no water or sewer services whatsoever, such as when the property is vacant. Appellant further alleges that property owners within the City may not avoid paying the Disputed Charges because, as a general matter, City Ordinances compel property owners to connect to the City's sewer system wherever such connection is available. See, e.g., City of Atlanta Code of Ordinances

("City Code"), § 154-277 (f).[2]

The City is a Georgia municipal corporation and DWM is one of its departments. DWM operates the City's water and sewer systems as an "enterprise fund" within the meaning of OCGA § 36-81-2 (7).[3] It is the sole utility providing water and sewer services to City residents.

City Ordinance 98-O-1920 (the "Franchise Fee Ordinance")

---

[2] City Code § 154-277 (f) provides:

Where the commissioner determines that sewer service is available to any lot, parcel of land, premises, or facility, 60 days' notice will be given to the owner of such lot, parcel of land, premises, or facility directing connection to available sewer, and billing as provided in subparagraphs (a) through (e) above will thereafter be initiated unless an exemption is authorized as set forth in subparagraph (g) below.

[3] Code section 36-81-2 (7) defines an enterprise fund as:

a fund used to account for operations that are financed and operated in a manner similar to private business enterprises where the intent of the governing authority is that the costs of providing goods and services to the general public on a continuing basis be financed or recovered primarily through user charges or where the governing authority has decided that periodic determination of revenues earned, expenses incurred, or net income is appropriate for capital maintenance, public policy, management control, accountability, or other purposes. For purposes of this paragraph, the term "costs" means expenses, including depreciation.

6

levies a five percent charge on DWM's gross revenue (the "Franchise Fee"). The Franchise Fee Ordinance's recitals state that the amounts collected compensate the City for the costs to it associated with DWM's use of "the City's rights[-]of-way and streets for their lines, cables, pipes, etc[.]" Ordinance 98-O-1920, Recitals. Its recitals note that DWM is similar to private utilities, such as Georgia Power, Atlanta Gas Light, and BellSouth, insofar as each utility uses the City's streets and rights-of-way. See id. The City, the recitals note, "has executed franchise agreements with each of these [private] utilities for a franchise fee on the gross revenues of the utility as compensation to the City" for such use, and the City "should be compensated for the use of its streets and rights-of-way by the water and sewer system the same as it is compensated by other utilities." Id.

City Ordinance 98-O-1921 (the "PILOT Ordinance") levies "an annual Payment in Lieu of Tax" on real property owned by DWM (the "PILOT"). Because DWM's real property is public, and therefore

exempt from ad valorem taxation, see OCGA § 48-5-41 (a) (1) (A),[4] the City levies a payment in lieu of tax on DWM "in the same amount that would have been assessed for property tax if [the water and sewer system] had been a private[ly]-owned entity." Ordinance 98-O-1921, § 1. The recitals state that DWM, as an owner of real property within the City, "utilize[s] facilities and services provided by the General Fund,"[5] and that the imposition of a PILOT "to recover the cost of services provided" is a "a common approach utilized by" other cities. Id.

2. *Attachments to the Complaint and Appellant's related allegations.*

Appellant attached to his Complaint numerous exhibits that he contends show the Franchise Fee and PILOT are taxes. Among other things, these exhibits include excerpts from an audit performed by the City's internal auditor in 2003 (the "Audit") excerpts from the City's Revenue Manual for fiscal year 2014 (the

---

[4] Code section 48-5-41 (a) provides that "all public property" is "exempt from all ad valorem property taxes in this state," except as specified therein.

[5] The City contends that the services funded by the PILOT include police and fire protection. **«See Appellee Br. at 1, 14, 22»**

"2014 Revenue Manual") excerpts of two transcripts containing testimony from financial officer Mohamed Balla on behalf of the City and documentation related to the City's water and wastewater revenue bonds and their validation by the Superior Court of Fulton County.

(a) *The 2003 Performance Audit.*

In January 2003, the City's Office of the City Internal Auditor (the "Internal Auditor") published an audit analyzing DWM's finances from 1999 to 2001. On the basis of this Audit and the City's "silence" in response thereto Appellant's Complaint alleges that DWM "already pays customary administrative and indirect costs to the City's General Fund . . . such that the subject [F]ranchise [F]ees and PILOT payments . . . are above and beyond, and grossly in excess of, any General Fund expenses actually incurred by and appropriately allocated to" DWM.

The Audit explained that DWM paid the amounts collected from the Franchise Fee and the PILOT to the General Fund "as a single combined annual payment" of $9.8 million annually, for a

9

total of $29.4 million from 1999 through 2001. From this data, the Internal Auditor "identified an issue . . . that merits a separate discussion." The Audit expressed worry that "the rationale for the PILOT and its relationship to other charges for direct and indirect administrative support from the City's general fund is unclear."

The Audit further explained that the Disputed Charges "are intended to take the place of property taxes and franchise fees paid by privately-owned utilities." But, the Audit noted, "[t]he basis for the annual payment is unclear because of the other payments from the water and sewer fund to the general fund."

(b) *The City's 2014 Revenue Manual.*

Appellant also attached to his Complaint excerpts from the City's Revenue Manual for the 2014 Fiscal Year. The Revenue Manual divides the City's "revenues and sources of income" into various categories, including "taxes" and "charges for services," and it categorizes the PILOT and Franchise Fee as taxes. The Revenue Manual further provides that, separate and apart from the PILOT and Franchise Fee, DWM allocates funds to the City to compensate

10

the City for its "indirect costs" which are attributable to DWM.

(c) *The City's Water and Wastewater Revenue Bonds.*

In 1999, the City adopted a Master Bond Ordinance (Ordinance 99-O-0399) "providing for the issuance by the City of Atlanta" of certain "Water and Wastewater Revenue Bonds[.]"Appellant attached excerpts of this Ordinance to his Complaint. Its terms expressly define the "Expenses of Operation and Maintenance" as "all expenses reasonably incurred in connection with the operation and maintenance of the System . . . . exclud[ing] Franchise and P[ILOT] Payments." The "System" is defined as "the combined drinking water, sanitary sewer, and wastewater system of the City[.]" The 1999 Master Bond Ordinance was adjudicated and validated by the Superior Court of Fulton County pursuant to Georgia's Revenue Bond Law, OCGA § 36-82-60 et seq. This validation was essentially renewed when, in 2021, the Fulton County Superior Court issued an order validating subsequent water and wastewater revenue bonds. In the 2021 order, the Fulton County Superior Court took "[j]udicial notice . . . that the [1999]

11

Master Bond Ordinance, as supplemented and amended . . . ha[s] been adjudicated by judgment of this Court to be valid and binding upon the Defendant City, and the terms and provisions thereof have been in each and every respect, confirmed and validated[.]" Appellant's Complaint alleges that, pursuant to these orders, the Fulton County Superior Court "has already held, as a matter of fact and law . . . that the PILOT and franchise charges are not expenses of the water and sewer department reasonably incurred with the operation and maintenance of the City's water and sewer system[.]" Appellant further alleges that because these bonds have been validated, they are "forever conclusive upon the City" under Georgia law.[6]

(d) *Testimony of Mohamed Balla on behalf of the City.*

---

[6] Though "the judgment of the superior court confirming and validating the issuance of the bonds and the security therefore shall be forever conclusive against the governmental body upon the validity of such bond and the security therefor," OCGA § 36-82-78, we have made clear that "this restriction only attaches to those matters that are referenced and adjudicated in the bond proceedings." *Columbus Bd. of Tax Assessors v. Med. Ctr. Hosp. Authority*, 302 Ga. 358, 362 (2) (806 SE2d 525) (2017) (citation and punctuation omitted) (holding that a prior bond validation did not establish whether a particular property interest was public for tax purposes because such issue was "separate and distinct" from the issues presented in the bond validation proceeding).

12

In further support of his claims, Appellant attached to his Complaint two excerpts of testimony by Mohamed Balla regarding DWM's finances. The first excerpt contains Balla's testimony before the Water and Sewer Appeals Board from an administration action Appellant filed prior to bringing the suit at issue here. At the time this testimony was given — November 2017 — Balla was the Chief Financial Officer for DWM. The second excerpt contains deposition testimony Balla gave in an unrelated case[7] in May 2019, when Balla was the Deputy Commissioner for the City's Office of Financial Administration.

In his November 2017 testimony before the Appeals Board, Balla testified that "the PILOT . . . is a tax, essentially, on real property that's owned by [DWM]." The amount of the PILOT, Balla explained, is "the same" as the amount of property taxes that would otherwise be paid if DWM's property were subject to property tax. Balla described the Franchise Fee as "a [five] percent sales tax fee."

[7] *City of Sandy Springs, Georgia v. City of Atlanta, Georgia*, Superior Court of Fulton County, Case No. 2018-CV-313783.

During cross-examination, Balla testified that the money transferred from DWM to the City's General Fund "is collected from . . . water revenues." He explained that "[five] percent" of each customer's bill who lived within the City's territorial limits[8] "was a [F]ranchise [F]ee," but it "would be a lot more difficult" to determine the portion of a City resident's bill that was attributed to the PILOT.

During Balla's deposition testimony in the unrelated 2019 case, he explained that DWM pays "a PILOT fee, a Franchise Fee, direct cost and indirect cost to the [G]eneral [F]und."

(e) *Appellant's claims for relief.*

Based on the allegations and documents described above, Appellant brought 23 claims for relief. His Complaint includes four claims for a tax refund under OCGA § 48-5-380 (Counts 6, 8, 13 and 14); ten claims seeking declarations under OCGA § 9-4-1 et seq. that the Ordinances violate various provisions of the Georgia

---

[8] DWM has some customers outside the City's territorial limits. The Franchise Fee is not assessed on those customers **«V2: 264 (SAC Ex. P)»**, so Appellant's putative class includes only DWM customers that have service addresses within the City. **«V3: 1 (SAC Preamble)»**

14

Constitution, the Georgia Code, and the City Charter (Counts 1-5, 7, 9-12); five claims seeking damages for violations of the Due Process and Takings Clauses found in the United States and Georgia Constitutions (Counts 15-20); one claim for money had and received (Count 20); one claim for unjust enrichment (Count 21); one claim seeking a permanent injunction under OCGA § 9-4-3 (a) and 42 USC § 1983 (Count 22); and one claim seeking that funds collected pursuant to the Ordinances during the pendency of the litigation be paid into the registry of the trial court and that his attorney's fees be paid from these funds (Count 23).

II. *Review of the City's Motion for Judgment on the Pleadings.*

The trial court granted the City's motion for judgment on the pleadings with respect to each of Appellant's 23 claims for relief. Appellant argues that in doing so, the trial court erred by: (1) misapplying the standard of review applicable to motions for judgments on the pleadings, (2) failing to consider certain exhibits to the Complaint, (3) holding that Appellant was not entitled to a tax refund under OCGA § 48-5-380, (4) holding that the Ordinances

15

were lawful exercises of the City's Supplementary Powers, (5) giving undue deference to the statements of legislative intent found in the Ordinance's recitals, and (6) holding that the Disputed Charges were not taxes as a matter of law.

Chief among these alleged errors is Appellant's first enumeration: the trial court's alleged failure to correctly apply the standard applicable to motions for judgment on the pleadings. As explained further below, this standard generally requires the court to treat the factual allegations of the non-moving party as true. See *Trop, Inc. v. City of Brookhaven*, 296 Ga. 85, 86 (1) (764 SE2d 398) (2014). Appellant argues that, notwithstanding this rule, the trial court failed to take as true his allegations (1) that he pays and has paid the Disputed Charges via his monthly bill, (2) that the revenue generated from the Disputed Charges grossly exceeds the costs to the City for which they purportedly serve as compensation, and (3) that the City is compensated for the Associated Costs by means of other monetary transfers to the City's General Fund, such that the Disputed Charges serve solely to generate general revenue.

16

For the reasons we set out below, we agree that the trial court erred by failing to treat these allegations as true. This error affected not only the court's analysis of whether Appellant could bring a tax refund action under OCGA § 48-5-380 and of whether the Disputed Charges are taxes or fees, but some or all of Appellant's other claims as well.[9] We accordingly vacate the trial court's judgment on the pleadings, as expressed in Divisions I – V of its omnibus order[10] and remand for reconsideration of Appellant's claims. Because we vacate the trial court's judgment on the pleadings for this reason, we do not reach Appellant's other enumerations of error regarding the motion for judgment on the pleadings.

A. *Standard of Review.*

---

[9] The trial court's failure to treat Appellant's allegations as true concerns, at a minimum, Appellant's statutory claims for a tax refund. But it is difficult to discern with certainty which of the trial court's denials of Appellant's other claims were determined by its failure to treat these allegations as true and by conclusions which resulted from this failure (such as its conclusion that the Disputed Charges were not taxes). We accordingly leave it for the trial court on remand to reassess each of Appellant's 23 claims using the proper standard of review.

[10] The trial court's order contained six divisions, the first five of which denied each of Appellant's twenty-three claims pursuant to the City's motion for judgment on the pleadings. In the sixth division, the trial court denied Appellant's two motions for partial summary judgment.

"Our review of a trial court's decision on a motion for judgment on the pleadings is de novo." *McBrayer v. Scarbrough*, 317 Ga. 387, 388 (1) (893 SE2d 660) (2023). "A motion for judgment on the pleadings should be granted only if the moving party is clearly entitled to judgment." *Trop, Inc.*, 296 Ga. at 87 (1) (citation and punctuation omitted). "[I]n reviewing such motions, all well-pleaded material allegations of the opposing party's pleading are to be taken as true, and all allegations of the moving party which have been denied are taken as false." *Hamon v. Connell*, 315 Ga. 760, 760 (1) (883 SE2d 785) (2023) (citation and punctuation omitted). That said, a trial court "is not required to accept the legal conclusions the non-[moving ]party suggests that those facts dictate." *Oasis Goodtime Emporium I, Inc. v. City of Doraville*, 297 Ga. 513, 522 (3) (a) (773 SE2d 728) (2015) (citation and punctuation omitted).

B. *The trial court erred on review of the City's motion for judgment on the pleadings by concluding that the Appellant did not pay the Disputed Charges.*

1. Code section 48-5-380 (b) provides in pertinent part that "[a]ny taxpayer from whom a tax . . . was collected who alleges that

such tax . . . was collected illegally or erroneously may file a claim for a refund with the governing authority of the county or municipality[.]" The trial court held that Appellant is not entitled to a tax refund under this statute[11] because, among other reasons, he does not pay the Disputed Charges. We disagree.

2. Appellant alleged that he paid the Disputed Charges, but the trial court, citing *Parr Realty Co. v. Carroll*, 131 Ga. App. 549 (206 SE2d 550) (1974), discredited this allegation based on what it believed were conflicts with the text of the Ordinances and with Appellant's water and sewer bill, which were attached to the Complaint. See *Parr Realty*, 131 Ga. App. at 549 (1) ("Where exhibits attached to a complaint conflict with the allegations[,] the exhibits are controlling."). Because there is no such conflict, however, the

---

[11] While Georgia's appellate courts have sometimes referred to the ability to bring a statutory cause of action as "statutory standing," this concept is distinct from constitutional standing, and "unlike the constitutional doctrine of standing, statutory standing does not implicate a court's power to adjudicate a case." *Oldham v. Landrum*, 363 Ga. App. 284, 291 (870 SE2d 82) (2022) (Pinson, J., concurring in part and dissenting in part). See also *Cobb County v. Floam*, 319 Ga. 89, 93 (1) n.3 (901 SE2d 512) (2024) (distinguishing between constitutional standing and statutory standing); *Sons of Confederate Veterans v. Henry County Bd. of Comm'rs*, 315 Ga. 39, 63-64 (2) (d) (880 SE2d 168) (2019) (same).

rule in *Parr* does not apply, and the trial court erred by failing to treat Appellant's allegation as true, as explained below.

The Ordinances provide that the Disputed Charges are levied on DWM and that DWM shall deposit the revenue resulting from these charges in the City's General Fund. See Ordinance 98-O-1920, §2; Ordinance 98-O-1921, § 2. Appellant alleges that DWM satisfies its obligations to the City's General Fund by surreptitiously passing on the Disputed Charges to DWM's customers via their monthly bills. Appellant's allegation acknowledges, rather than conflicts with, the text of the Ordinances. And the fact that Appellant's bill fails to include itemized charges corresponding to the Franchise Fee and the PILOT does not conflict with Appellant's allegation that the City has imposed *hidden* taxes on DWM customers. Because Appellant alleged that he paid the Disputed Charges and that allegation was not inconsistent with the exhibits, the trial court was required to treat this allegation as true. It erred by failing to do so and by concluding that Appellant was unable to bring a tax refund claim under OCGA § 48-5-380 for that reason.

3. Moreover, the trial court failed to afford due consideration to the fact that DWM is a department of the City with no separate legal existence of its own. *Brownlee v. Dalton Bd. of Water, Light & Sinking-Fund Com'rs*, 59 Ga. App. 538, 538-539 (1 SE2d 599) (1939) ("A department of a city government, created by the city's charter, and which is authorized to discharge duties primarily resting upon a municipality, is an agency or instrumentality of the city government for the performance, for the municipality, of the duties imposed upon it. Such department is not a separate and distinct corporate entity which is subject to suit for its failure to perform, or for the violation of[ ] any duty resting upon it unless it is so created by clear legislative intent."). Thus, to the extent the Franchise Fee Ordinance levies a charge "on the gross revenues of the water and sewer operations derived from fees and charges for the provision of services," Ordinance 98-O-1920, Sec. 1, and DWM pays the Franchise Fee to the City from those gross revenues, it is allegedly levying a charge on the DWM customers who generate those revenues by paying for DWM's services. Though the PILOT

21

Ordinance levies a charge on DWM's real property rather than its revenue, the testimony of DWM's own financial officer makes clear that the Disputed Charges, including the PILOT, are "collected from . . . water revenues." DWM, as a department of the City, is merely the means by which the City assesses and collects the Disputed Charges from DWM's customers. As alleged, a payment to DWM then is a payment to the City. Because the Complaint alleges that Appellant pays the Disputed Charges to the City, it was error for the trial court to hold that he did not and to deny his statutory tax refund claim on that basis.

C. *The trial court also failed to treat as true other key allegations in Appellant's Complaint.*

As stated above, Appellant alleged that (1) the revenue generated from the Disputed Charges grossly exceeds the Associated Costs and (2) that DWM compensates the City for the Associated Costs through other monetary transfers to the General Fund. As such, Appellant alleges, the Disputed Charges serve solely to raise general funds rather than as compensation for the Associated Costs.

22

The trial court did not credit these allegations. Instead, in both its factual findings and in its analysis, the trial court stated that the Disputed Charges "allow the City to recoup costs related to DWM's use of the City's streets and right-of-way . . . and for City Services provided to DWM just like other privately owned utilities[.]" In making this finding, the trial court said that it relied on "the plain language of the enacting Ordinances[.]" But the precatory language to which the trial court refers is found in the Ordinances' recitals, rather than its operative sections. Neither Ordinance mandates that use of the Disputed Charges is restricted to compensating the City for the Associated Costs. Compare *Bellsouth Telecommunications, LLC, v. Cobb County*, 305 Ga. 144, 147 (1) (824 SE2d 233) (2019) (explaining that the Georgia Emergency Telephone Number 911 Service Act, OCGA § 46-5-120 et seq. (the "911 Act"), restricts use of the funds generated pursuant thereto to pay specific costs enumerated in the 911 Act). And so, while the recitals may express the City Council's intention that the Disputed Charges be used to cover certain expenses, nothing from the text of the Ordinances

23

themselves tells us how that revenue is used in practice. Because the operative provisions of the Ordinances do not conflict with Appellant's allegations that the Disputed Charges function differently in practice, the trial court was required to treat them as true.

The trial court's failure to credit Appellant's factual allegations permeated its analysis of the issues presented. We accordingly vacate its judgment on the pleadings as expressed in Divisions I through V of its order and remand for reconsideration of Appellant's claims under the standard applicable to motions for judgment on the pleadings.

III. *The trial court correctly denied Appellant's two motions for partial summary judgment.*

In addition to contesting the City's motion for judgment on the pleadings, Appellant filed two separate motions — one for each of the two Ordinances — seeking partial summary judgment. In these motions, which were based on evidence previously attached to the

Complaint,[12] Appellant sought a declaration that the Ordinances impose taxes on him in violation of certain provisions of the Georgia Constitution, the Georgia Code, and the City Charter. In the final division of the trial court's omnibus order, it denied Appellant's motions based on its prior conclusion that the Disputed Charges were fees paid by DWM. The trial court further held that even if it had not reached this conclusion, Appellant was still not entitled to summary judgment because he had failed to demonstrate that no genuine disputes of material fact remain.

On appeal, Appellant argues (1) that the evidence presented conclusively establishes the truth of his allegations and (2) that, even when considered without these allegations, the Franchise Fee is a tax under this Court's precedent. We disagree. After close review of the record and the applicable caselaw, we conclude that Appellant has failed to meet his burden on summary judgment. We accordingly affirm the trial court's denial of Appellant's motions for partial

_____

[12] The City's responses also relied exclusively on evidence attached to Appellant's Complaint, except that its excerpts of Balla's testimony included some portions of the transcript not included with the Complaint.

summary judgment.

Like our review of the City's motion for judgment on the pleadings, our review of Appellant's motions for summary judgment is de novo. See *Prodigies Child Care Management, LLC v. Cotton*, 317 Ga. 371, 372 (1) (893 SE2d 640) (2023). But unlike review of a defendant's motion for judgment on the pleadings, we do not simply accept the nonmoving party's allegations as true. Instead, to prevail on a motion for summary judgment, "the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *First Acceptance Insurance Co. of Ga., Inc. v. Hughes*, 305 Ga. 489, 490 (826 SE2d 71) (2019). See also OCGA § 9-11-56 (c).

A. Two key allegations appear material to Appellant's theory of the tax-versus-fee issue: (1) Appellant's claim that the revenue generated by the Disputed Charges grossly exceeds the Associated Costs and (2) his claim that the Associated Costs for which the Disputed Charges purportedly compensate the City are in fact

satisfied by other direct and indirect cost transfers from DWM to the City's General Fund. The City disputes these material allegations. Thus, if Appellant's theory is correct — an issue on which this Court expresses no opinion — Appellant also has the burden of demonstrating that these disputes are not genuine disputes of material fact. A review of the evidence shows that Appellant has failed to do so.

First, we consider briefly Appellant's allegation that the Disputed Charges grossly exceed the purported costs to the City. In support of this allegation, Appellant's Complaint attached his open records request to and the joint response from DWM and the City's Department of Finance.[13] These exhibits include spreadsheets prepared and produced by the City showing that it collected between $19.4 million and $21 million dollars per year pursuant to the

---

[13] These exhibits were attached to Appellant's first amendment to the SAC, which was filed after the parties filed their dispositive motions but before the trial court ruled on them. **«V5: 143-191»** This filing occurred after briefing was complete on the City's motion for judgment on the pleadings, but just prior to the filing of Appellant's reply briefs on his partial motions for summary judgment.

Ordinances for fiscal years 2014 through 2022, except for fiscal year 2016.[14]

In addition to documents regarding the revenue collected, Appellant also requested documents regarding the corresponding costs to the City for which the Disputed Charges served as compensation, but the City's departments produced no such records. The parties' correspondence shows that Appellant requested "all records demonstrating the amount of actual costs and expenses actually incurred by the City's General Fund as a result of the use of the City's streets and rights-of way by [DWM]" which were recovered through payments made to the General Fund pursuant to the Franchise Fee Ordinance, rather than other direct and indirect cost transfers from DWM to the General Fund. The custodians to whom Appellant directed his open records request responded that "[t]here are no such records in the custody of the Departments of Finance or Watershed Management which are responsive to this

---

[14] It is unclear whether the custodian's response omitted records relating to fiscal year 2016 or if those records were produced but inadvertently omitted from the record on appeal.

request." Appellant requested the same records with respect to the PILOT and received the same response.

Appellant alleges that revenue generated from the Disputed Charges grossly exceeds costs. But he has only provided evidence establishing the revenue generated. There is no evidence in the appellate record — none — showing the costs the City incurs associated with DWM's use of its streets and rights-of-way or its provision of police and fire protection to DWM's real properties. And since Appellant has not presented evidence concerning these expenses, we cannot determine whether revenue exceeds costs or vice versa. Appellant has accordingly failed to demonstrate that the City's denial of this allegation is not a genuine dispute of material fact.

We consider next Appellant's allegation that the costs to the City for which the Disputed Charges purportedly serve as compensation are in fact covered by other cost transfers, such that Disputed Charges serve purely as a source of general revenue for the City. In support of this allegation, Appellant relies on the City's 2014

Revenue Manual and the City's response to Appellant's open records request. We consider each of these documents in turn.

Appellant claims that the 2014 Revenue Manual establishes that, separate and apart from the Disputed Charges, DWM makes other transfers to the City to compensate it for its indirect costs associated with DWM. But while the Revenue Manual does reference other indirect cost transfers, the description of these costs does not include the costs described in the Ordinances. Instead, these transfers cover "purchasing, accounting, budgeting, [and] human resources administration," among other things. Thus, the Revenue Manual does not support Appellant's allegations.

As recounted above, Appellant submitted an open records request to DWM and the City's Department of Finance requesting any document demonstrating the costs to the City referenced in the Ordinances which were covered by the Disputed Charges, rather than by other payments. In response, the records custodians stated that there were no documents within the custody of the Departments of Finance or Watershed Management that were

responsive to Appellant's request. Pretermitting whether we can consider this response, as it is included only in a supplemental pleading filed after briefing on Appellant's motions was complete, it still fails to demonstrate the absence of a dispute of genuine material fact. An absence of evidence is not necessarily evidence of absence. It could be, as Appellant contends, that the City produced no documents because there are no such costs. But it could also be that the documents are possessed by other City departments, such as the Department of Public Works, or that the City has some objection to Appellant's request which would need to be resolved through motions to compel discovery or litigation arising from allegedly incomplete responses to open records requests. In any event, Appellant has not identified any other specific cost transfer which compensates the City for the costs referenced in the Ordinances. Appellant has given only the vaguest of references to transfers that in fact cover other expenses. As such, Appellant has failed to meet his burden on summary judgment.

B. Appellant also argues that the Franchise Fee Ordinance is

a tax as a matter of law, notwithstanding any factual disputes between the parties. Appellant argues that, under this Court's precedent, charges imposed by the government which are calculated as a percentage of the payor's gross revenue are taxes and that the Franchise Fee Ordinance is a tax because it is just such a charge. See e.g., *Cotton States Mut. Ins. Co. v. DeKalb County*, 251 Ga. 309, 309-310 (1) (304 SE2d 386) (1983) (holding that a county charge on insurance underwriting companies in the amount of three percent of the gross premiums received during the preceding year was a tax); *DeKalb County v. Atlanta Gas Light Co.*, 228 Ga. 512, 512-513 (1) (186 SE2d 732) (1972) (holding that an ordinance requiring certain utilities to obtain a license for the use of the county's rights-of-way by paying a fee calculated in part as a "percentage of non-industrial gross revenue" was a tax). Pretermitting whether Appellant has read this case law correctly, the cases cited are distinguishable. Though the Franchise Fee Ordinance imposes a charge based on DWM's gross revenues, similar to the cases above, Appellant claims that he, rather than DWM, ultimately pays the Franchise Fee. To

the extent he does so, it is not based on a percentage of *his* gross revenue but passed onto him as a percentage of his water and sewer bill, which is comprised of a flat base charge and a variable portion based on the services he uses. These cases are therefore not controlling on the tax-versus-fee issue, and this argument fails.

*Judgment affirmed in part and vacated in part, and case remanded. All the Justices concur.*

S24A0652.  JONES v. CITY OF ATLANTA.

BETHEL, Justice, concurring.

I join the opinion of the Court in full. I write separately to offer my perspective on an issue addressed in part by the trial court but not reached in the majority opinion, that is, the question of whether the Disputed Charges are taxes, fees, or something else altogether. More specifically, I write to briefly explore what I see as analytical gaps in the resolution of that issue below in hopes that, on remand, the parties and the trial court will engage in a more detailed consideration and application of our precedent on municipal utility charges and any other relevant aspect of our law to the specific facts of this case.

Through its implementation of the Disputed Charges, which consist of the so-called "franchise fee" and "PILOT," the City claims it is recovering the general fund costs associated with the operation of the DWM that are borne by the City's other departments. Appellant's basic argument is that the City, through the DWM, is

34

charging him not only for the water and wastewater services the DWM provides, but also has added further charges — the Disputed Charges (or some portion thereof) — that are unrelated to the operation of the DWM and instead fund the City's general government operations without any relation to the delivery of water and wastewater services. Appellant claims this additional amount is, de facto and de jure, a tax unauthorized by Georgia law. The City, however, argues that it treats the DWM like a public utility operating within the City. So, the City maintains, the Disputed Charges are not a tax but instead compensate the City for the benefit to the DWM of using the City's right of way (the franchise fee) and replace property tax revenue the City would collect if the DWM were a private entity (the PILOT). To the extent the funds raised by the Disputed Charges exceed even those costs, the City, in effect, seeks to operate the DWM at what the private sector would call a profit and to use that profit to subsidize other operations.

The trial court treated the parties' dispute as raising a straightforward tax-versus-fee issue that could be resolved simply

by assessing whether the Disputed Charges are more akin to charges deemed fees for services or to those deemed taxes under this Court's precedent.[15] The trial court also looked to opinions from this Court that recognize a broad power in local governments to set rates for the administration of utilities provided by those governments. But in conducting its analysis, the trial court neither took into account the specific underlying facts and circumstances of this case nor grappled with the principles underlying this Court's precedent and their applicability to this case. That strikes me as problematic.

As the majority opinion explains, the DWM *is* the City. So what the City labels as a "payment in lieu of taxes" does not really fit when there is no private interest that might otherwise have a tax liability.[16] Likewise, franchise fees are designed to compensate the general public for the use by private entities of publicly owned land.

---

[15] The trial court's order was prepared by counsel for the City.

[16] Compare an economic development project where a private developer and a public entity agree to allow the public entity to hold title to property to gain the benefit of a tax exemption while the private developer makes some designated payment in lieu of taxes that would otherwise be due if it held title to the property.

But, here, the City, and, by extension, the DWM, owns the right of way. We don't often think of compensating ourselves for using what we own. From an internal accounting perspective, we might expect departments within a larger organization to allocate costs among themselves to reflect the true cost of operations. And though the City says that its assessment of the franchise fee and the PILOT against the DWM is consistent with how other municipalities treat their public works department, no record has been developed at this stage in the proceedings on that point nor has the City endeavored to explain how that fact, if proven, would be relevant to the question of legal authorization for the City's course of conduct.[17] In my experience, public works departments do not ordinarily charge, for example, police and fire departments for wear and tear on the roads, and public safety departments generally do not charge for the protection they provide the other. Of course, the feature that most distinguishes the DWM from the other departments of a municipal

---

[17] "Everyone else is doing it" has a mixed record of success in legal arguments.

government is its status as an enterprise fund[18] with a dedicated stream of income derived from the provision of services to customers and a directive to operate that fund, at a minimum, in a manner that covers its own costs.

In light of these facts, it seems to me that whether the City has the power to implement the Disputed Charges in the name of cost recovery and, as alleged, to operate the DWM at an apparent profit, how the City may do either of those things, under what restrictions, and whether and how the City must prove or demonstrate cost recovery are all significant questions bound to require ultimate and clear resolution. And as best I can tell, this Court's precedent does not squarely resolve these questions.

---

[18] OCGA § 36-81-2 defines "enterprise fund" as follows:

[A] fund used to account for operations that are financed and operated in a manner similar to private business enterprises where the intent of the governing authority is that the costs of providing goods and services to the general public on a continuing basis be financed or recovered primarily through user charges or where the governing authority has decided that periodic determination of revenues earned, expenses incurred, *or net income* is appropriate for capital maintenance, *public policy*, management control, accountability, *or other purposes.*

(Emphasis supplied.)

In assessing the applicability of this Court's prior decisions to this case, then, it is essential that the trial court contend with the factual differences, as well as the similarities, between the case at hand and prior cases decided by this Court and, further, to search out the source of the legal principles announced therein. It is likewise important to evaluate whether other sources of Georgia law might provide guidance on the applicability of the principles underlying those cases. Further, as part of a comprehensive evaluation, the lower court should assess what impact, if any, the DWM's status as an enterprise fund might have in resolving the consideration of the propriety of the Disputed Charges.

In short, municipal utility transfer payments are an integral component of the operation of many Georgia cities. The lawfulness of these payments, and how their lawfulness should be determined, could have an immense impact on communities across our shared state. I have every expectation that the weighty questions found in this case will return for our consideration, whether in this case or another. I believe a robust record and thorough fleshing out of the

legal issues will, as always, be essential to our ability to discern the correct state of our law. Moreover, to the extent there is ambiguity in our laws, the General Assembly may see fit to provide clarity and stability.