NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: December 10, 2024

S24A0963.  HOLLIS et al. v. CITY OF LAGRANGE.

WARREN, Justice.

In 2023, plaintiffs Lonnie Hollis and Mason's World Bar & Grill, LLC, filed a putative class action against the City of LaGrange ("the City"), arguing that it imposed excessive mandatory charges for utilities services that it provided, which constituted a tax that was not authorized by the Georgia Constitution or by law.  The City filed a motion for judgment on the pleadings, and the trial court granted the motion, ruling that the Georgia Constitution prohibited the court from "engag[ing] in the regulation" of the utilities charges. The plaintiffs now appeal, contending that the trial court erred by concluding that it lacked authority to review the plaintiffs' legal claims.  We agree, so we vacate the trial court's judgment and remand the case for further proceedings.

1. As pertinent to this appeal, the record shows the following. In January 2023, the plaintiffs—City residents that paid for utilities services that were provided by the City—filed a putative class action complaint, alleging that the City imposed "excessive mandatory rates and charges for the provision of essential municipal utility services consisting of electric, gas, water, and sewer service for which [the plaintiffs] and the putative class have no alternative service provider"; that the charges "generate[d] profits in excess of the actual cost to the City of providing such services"; and that these profits were used to "rais[e] general revenues for the City in lieu of lawful property taxes," such that the excessive profits constituted "illegal taxes." In this respect, the complaint asserted that the excessive profits that the City obtained from the utilities charges constituted a tax under the test set forth in *Bellsouth Telecommunications, LLC v. Cobb County*, 305 Ga. 144, 146-147 (824 SE2d 233) (2019).[1] And the tax was illegal, the complaint

---

[1] In *Bellsouth*, we explained that generally, we consider four criteria in determining whether a charge is a tax, which we have defined as:

2

asserted, because it was not expressly authorized by the Georgia Constitution or by law, as required by Article IX, Section IV, Paragraph I of the Georgia Constitution of 1983.[2]  The plaintiffs sought "a refund of the illegal taxes" under OCGA § 48-5-380[3] with pre-judgment and post-judgment interest; a declaration that the utilities charges that were in excess of the actual cost of providing utilities services and that were used to generate general revenue for

---

> (1) a means for the government to raise general revenue based on the payer's ability to pay (i.e., income or ownership of property), without regard to direct benefits that may inure to the payer or to the property taxed; (2) mandatory; (3) not related to the payer's contribution to the burden on government; and (4) not resulting in a "special benefit" to the payer different from those to whom the charge does not apply.

305 Ga. at 146-147.

[2] That provision says, in pertinent part: "Except as otherwise provided in this Paragraph, the governing authority of any county, municipality, or combination thereof may exercise the power of taxation as authorized by this Constitution or by general law."

[3] OCGA § 48-5-380 says, in pertinent part:
(a) As provided in this Code section, each county and municipality shall refund to taxpayers any and all taxes and license fees:
> (1) Which are determined to have been erroneously or illegally assessed and collected from the taxpayers under the laws of this state or under the resolutions or ordinances of any county or municipality; or
> (2) Which are determined to have been voluntarily or involuntarily overpaid by the taxpayers.

the City constituted "an illegal tax"; and an injunction to prevent the City from assessing and collecting "such illegal tax."

In March 2023, the City filed an answer to the complaint, generally denying that its utilities charges were "illegal taxes," and in May 2023, the City filed a motion for judgment on the pleadings. At a hearing on the motion, the City argued that the trial court was not authorized to regulate municipal public utilities charges because Article III, Section VI, Paragraph V (d) of the Georgia Constitution generally prohibits the General Assembly from "regulat[ing] or fix[ing]" such charges.[4] To that end, the City asserted that "a judge can't do what the General Assembly can't do" and contended that the trial court was thus required to be "hands off in this area." The plaintiffs responded that Paragraph V (d) did not limit the trial court's authority to review their legal claims.

In February 2024, the trial court issued an order granting the City's motion for judgment on the pleadings. After briefly

---

[4] That provision says: "The General Assembly shall not have the power to regulate or fix charges of public utilities owned or operated by any county or municipality of this state, except as authorized by this Constitution."

4

recounting the plaintiffs' arguments, the court quoted several provisions of the Georgia Constitution, including Paragraph V (d), and concluded:

> The Georgia Constitution authorizes the City . . . to enter into the business of providing water, gas, electricity[,] and sewer services. And the Constitution prohibits the General Assembly from regulating the fees or charges for such services. By logical extension, this court cannot engage in the regulation of fees or charges for such services. The [plaintiffs] do not state a cause of action because of the clear statement of the Constitution.

The plaintiffs now appeal, contending that the trial court incorrectly ruled that Paragraph V (d) prevented it from addressing their claims.

2. (a) We understand the trial court's order as follows. First, it appears that the trial court determined that the plaintiffs' claims that the City's utilities charges constituted an "illegal tax" would require the court, in reviewing those claims, "to regulate or fix charges of public utilities owned or operated by . . . [a] municipality" pursuant to Paragraph V (d). The trial court then concluded that it could not "regulate or fix" the City's utilities charges because Paragraph V (d) generally prohibits the General Assembly from

5

"regulat[ing] or fix[ing]" such charges. Apparently accepting the City's argument that "a judge can't do what the General Assembly can't do," the trial court ruled that Paragraph V (d) prevented the court from reviewing the allegations in the complaint. It thus determined that the City's motion for judgment on the pleadings should be granted because the plaintiffs' allegations failed as a matter of law.[5]

(b) We conclude that the trial court erred by determining that Paragraph V (d) prevented it from reviewing the allegations in the complaint, and by granting the City's motion for judgment on the pleadings on that basis. In interpreting a constitutional provision, "[w]e generally apply the ordinary signification to words," meaning that "we afford the constitutional text its plain and ordinary meaning, view the text in the context in which it appears, and read

---

[5] In considering a motion for judgment on the pleadings, "'all well-pleaded material allegations of the opposing party's pleading are to be taken as true, and all allegations of the moving party which have been denied are taken as false. A motion for judgment on the pleadings should be granted only if the moving party is clearly entitled to judgment.'" *Polo Golf & Country Club Homeowners Assn., Inc. v. Cunard*, 306 Ga. 788, 791-792 (833 SE2d 505) (2019) (citation omitted), disapproved on other grounds by *Cobb County v. Floam*, 319 Ga. 89 (901 SE2d 512) (2024).

6

the text 'in its most natural and reasonable way, as an ordinary speaker of the English language would.'" *Ga. Motor Trucking Assn. v. Ga. Dept. of Revenue*, 301 Ga. 354, 356 (801 SE2d 9) (2017) (citation omitted).

The constitutional provision at issue here—Paragraph V (d)—is part of Article III (titled "Legislative Branch"), Section VI (titled "Exercise of Powers") of the Georgia Constitution. Paragraph V (d) expressly restricts the power of "[t]he General Assembly" to "regulate or fix charges of public utilities owned or operated by . . . [a] municipality." By its plain text, this provision sets forth the limited scope of the General Assembly's legislative authority to regulate or fix municipal public utilities charges. The text of Paragraph V (d) does not mention the judicial branch at all—which is no surprise, given that this provision is housed in a section of the Georgia Constitution that pertains to the exercise of legislative power. Cf. *Domingue v. Ford Motor Co.*, 314 Ga. 59, 64 (875 SE2d 720) (2022) (concluding that because the plain text of a statute did "not mention, let alone expressly restrict," the admission of certain

7

evidence at trial, the statute did not preclude the admission of such evidence). And even if it did, the plaintiffs' claims that the City's excessive charges for utilities services constituted an "illegal tax" do not require the trial court to "regulate or fix" the City's utilities charges as a matter of discretionary policymaking. Rather, the claims ask the court to exercise its judicial authority to determine whether or not the charges are in fact taxes in the first place. Cf. *Bellsouth*, 305 Ga. at 146-151 (determining whether a charge imposed by two counties on telephone-service subscribers was "a tax or a fee").

Paragraph V (d) thus has no bearing on the trial court's judicial power to review the plaintiffs' legal claims, and therefore does not bar the trial court's review of those claims. And no party has otherwise challenged the judiciary's authority to review a case of this type if properly presented. See generally Ga. Const. of 1983, Art. I, Sec. II, Par. V; Ga. Const. of 1983, Art. VI, Sec. I, Par. I; *Lathrop v. Deal*, 301 Ga. 408, 429-432 (801 SE2d 867) (2017) (explaining the doctrine of judicial review and noting that "[t]he

8

Judicial Review Clause is merely a constitutional recognition of the inherent authority of a court to resolve conflicts between the Constitution itself and the statutory law, when the resolution of such conflicts is essential to the decision of a case already properly before the court").

In short, the trial court erred by determining that Paragraph V (d) precluded the court from reviewing the plaintiffs' claims. Accordingly, we vacate the trial court's order and remand the case for the court to address the City's motion for judgment on the pleadings in a manner consistent with this opinion.[6]

*Judgment vacated and case remanded with direction. All the Justices concur.*

---

[6] We express no opinion on the merits of the City's motion. We note, however, that we recently issued a decision involving similar claims that a city imposed unlawful taxes through charges billed to municipal utility customers. See *Jones v. City of Atlanta*, Case No. S24A0652, 2024 WL 4633416, at *2-5 (decided Oct. 31, 2024). Like in this case, we could not reach the merits of the city's motion for judgment on the pleadings, because the trial court failed to correctly apply the legal standard for reviewing such motions, see footnote 5 above. As a result, we vacated the trial court's ruling granting the city's motion and remanded the case. See id. at *6-7. See also id. at *10-11 (Bethel, J., concurring) (highlighting points the trial court may want to consider on remand with respect to conducting an analysis of the merits of that case).

9

PETERSON, Presiding Justice, concurring.

I concur in full in the Court's opinion. The trial court's ruling was based on the City's argument that the Georgia Constitution prohibits the General Assembly from regulating or fixing public utility charges, and therefore courts can't regulate or fix those charges, either, because what the General Assembly can't do, courts can't do. We reverse the trial court's decision on a narrow basis: Plaintiffs' claims require the trial court only to exercise judicial power, not to regulate or fix public utility charges. I write separately to offer an observation on what strikes me as more fundamental flaws in the City's argument.

The United States Constitution famously prohibits Congress from making any law "abridging the freedom of speech[.]"[7] U.S.

---

[7] The federal constitution is often a poor analogue to use when thinking about the scope of the General Assembly's legislative power; the General Assembly's powers are considerably broader than the powers of Congress. Congress has only enumerated powers (i.e., anything not expressly or implicitly authorized in the United States Constitution is prohibited), while the Georgia General Assembly has plenary powers to legislate in any manner not prohibited (i.e., anything not expressly or implicitly prohibited is authorized). See *DeKalb County School Dist. v. Georgia State Bd. of Educ.*, 294 Ga. 349, 352 (751 SE2d 827) (2013); *Sears v. State*, 232 Ga. 547, 553 (208 SE2d 93) (1974).

10

Constitution, Amendment I. That prohibition has long been interpreted as extending beyond Congress, though, and imposing similar restrictions on the rest of the federal government, see *New York Times Co. v. United States*, 403 U.S. 713, 714 (91 SCt 2140, 29 LE2d 822) (1971), and the States through the Fourteenth Amendment, see *Gitlow v. People of State of New York*, 268 U.S. 652, 666 (45 SCt 625, 69 LEd 1138) (1925) and *Stromberg v. People of State of Cal.*, 283 U.S. 359, 368 (51 SCt 532, 75 LEd 1117) (1931). And so it may seem natural, at first glance, to assume that limitations on Georgia's legislative branch extend to the other branches.

A second glance – at least by a textualist – may suggest a different answer. As a simple matter of logic, a limitation on the exercise of a particular power by a particular branch says little-to-nothing about a different branch.

But a third glance, it seems to me, yields what may be a more accurate answer: it depends. At least three contexts occur to me in which a limitation on the General Assembly's exercise of legislative

11

power may well effectively pass through to other government entities.

First, limitations on the General Assembly's power to appropriate funds may well effectively pass through to the government entities that receive appropriations. Take, for example, the Gratuities Clause. See Ga. Const. Art. III, Sec. VI, Para. VI (a) ("Except as otherwise provided in the Constitution, (1) the General Assembly shall not have the power to grant any donation or gratuity or to forgive any debt or obligation owing to the public, and (2) the General Assembly shall not grant or authorize extra compensation to any public officer, agent, or contractor after the service has been rendered or the contract entered into."). On its face, this limits only the General Assembly. But the power state entities have to spend funds appropriated to them by the General Assembly is necessarily limited to spending those funds for the purpose the General Assembly appropriated them. And if the General Assembly is prohibited from appropriating funds for the purpose of granting a gratuity, then it would seem to follow that other state entities are

prohibited from using appropriated funds to grant a gratuity. This doesn't necessarily mean that the Gratuities Clause itself directly prohibits the executive or judicial branch from granting a gratuity, but it does suggest that it has the same effect even if operating more indirectly. Indeed, we have previously used a similar theory to interpret statutes conferring taxing and spending power on counties as not permitting counties to grant gratuities. See *Atlanta Chamber of Commerce v. McRae*, 174 Ga. 590, 594 (163 SE 701) (1932) (reading statutes conferring power on counties as not authorizing gratuities in the light of the Gratuities Clause then in effect).[8]

Second, the executive branch's power to execute the laws might be circumscribed by limitations on the General Assembly's legislative power. If the constitution prohibits the General Assembly

---

[8] The text of the Gratuities Clause has changed over time, such that the continuing validity of decisions predating the 1983 Constitution should carefully be considered in the light of the text in effect at the time of such decisions. See, e.g., *Atlanta Chamber of Commerce*, 174 Ga. at 594 (considering constitutional text then in effect providing that "[t]he General Assembly shall not, by vote, resolution, or order, grant any donation or gratuity in favor of any person, corporation, or association" (quoting Ga. Const. of 1877, Art. 7, Sec. 16, Para. 1)).

from enacting a certain type of law, it stands to reason that an executive officer or agency cannot execute the laws that have been passed in a way that effectively would convert those laws into an impermissible law.

Third, no Georgia government entity (state or local) may ever act beyond the scope of authority granted to them. If a government entity's authority to act is dependent on a grant of authority in an act of the General Assembly, then that entity's authority is presumptively limited by the limitations on the laws the General Assembly may pass.

But to resolve the claims here, the trial court need exercise only the judicial power. The courts do not receive the judicial power by act of the General Assembly; rather, the judicial power is conferred directly on the state's classes of court by the Georgia Constitution. See Ga. Const. of 1983, Art. VI, Sec. I, Para. I. Thus, the scope and nature of the judicial power is determined according to its own original public meaning, see *Sons of Confederate Veterans v. Henry Cnty. Bd. of Commissioners*, 315 Ga. 39, 47 (2) (a) (880 SE2d 168)

14

(2022), and not by reference to the General Assembly's legislative power.